WILLIAM NIBLO, Appellant, *v.* JOHN BINSSE and LOUISA LA FARGE, Executors, etc., of John La Farge, deceased, Respondents.

Where the plaintiff undertakes to perform certain work upon the house of the defendant, at a price stipulated to be paid, and the building is destroyed by fire before the work is completed, the plaintiff will be entitled to recover for the work performed up to the time of the fire.

In such contract, by the destruction of the house without the fault of the plaintiff, the defendant is put in default, upon the principle that he was bound to finish the house to enable the plaintiff to complete his contract.

Where the owner of property retains possession, and contracts for the performance of work upon it, there is an implied obligation for him to have it on hand and in readiness for the labor to be performed.

THE action was brought by the plaintiff, as assignee of Anthony E. Hitchings, to recover for work done and materials furnished under a contract with John La Farge, the defendant's testator. The contract was dated April 14, 1853, and by it the said Hitchings agreed to furnish and put into a certain building then being built by the testator in the city of New York, known as the La Farge House and Metropolitan Hall, certain steam works, pipes and coils, for heating the rooms and conveying hot and cold water to different parts of the building. The work, by the terms of the contract, was to be completed by the 1st of October, 1853, under the superintendence of an architect named, and Hitchings was to be paid $10,000 for the job, as follows: $7,500 in certain sums specified, as certain parts of the work should be completed; $1,500 when the work was all finished, and the balance, $1,000, to be paid when the work was tested and found to be sufficient according to the provisions of the contract. All the payments were to be made upon the certificate of the architect that the work was done according to the agreement. Hitchings began the work, but did not complete it by the 1st of October, 1853, according to his agreement, and continued working upon the job until the 8th of January, 1854, when the whole buildings were destroyed by fire without any fault upon the part of La Farge or of Hitchings. La Farge

had in the mean time paid Hitchings on account of the work $7,500 without any certificate of the architect. Of this sum $1,000 was paid October 24th, 1853, and $1,500 some time in December, 1853, while the work was being carried on, and after the work was to have been finished by the terms of the contract. At the time of the fire the work remaining to be done and the materials to complete the contract would have cost $1,000. Previous to the fire the concert room had been opened and used for concerts several times, but the hotel had not been opened for guests. No test had been applied to determine the sufficiency of the work as far as it had been done, and no certificate of the architect was ever procured.

After the fire, La Farge kept and retained for his own use the iron pipe which was put into the building by Hitchings, and sold the same to the latter for $1,000. The demand was duly assigned by Hitchings to the plaintiff. La Farge died and the defendants are his executors, duly appointed. Upon these facts the referee, to whom the cause was referred to try and determine, held, as a conclusion of law, that the plaintiff was not entitled to recover, and judgment was thereupon entered in favor of the defendants. From this judgment the plaintiff appealed to the General Term of the Supreme Court in the first district, where the judgment was affirmed, and he thereupon brought his appeal to this court.

*W. F. Allen*, for the appellant.

*T. J. Glover*, for the respondents.

JOHNSON, J. It was held, both by the referee and the Supreme Court at General Term, that the plaintiff was not entitled to recover merely because the work was not finished and the job completed at the time the building upon which the work was being done was destroyed by fire. To my mind, this is a very plain case in favor of the plaintiff. The decision, very properly, was not put upon the ground that the work was not completed within the time specified in the agreement, but upon the naked ground that the contractor, having failed to do all the work he had contracted to do,

could not maintain the action. It is plain, upon the facts found, that the time of performance had been extended by the mutual assent of the parties to the contract. When the time expired the agreement was not rescinded or terminated by the owner of the building, but the contractor was allowed to go on under it, and in performance of it, until the building was destroyed by the fire. Payments were made in the mean time, and the contract treated as in all respects in force by both parties. The work was in progress, and nine-tenths of the labor and expense had been performed and incurred when the further prosecution of the work was arrested and its completion prevented by the destruction aforesaid. The case is to be treated, therefore, precisely as though the destruction of the building had occurred before the first of October, 1853, when by the terms of the contract the work should have been finished. No principle of law is better settled than this, that when one party has, by his own act or default, prevented the other party from fully performing his contract, the party thus preventing performance cannot take advantage of his own act or default and screen himself from payment for what has been done under the contract. The law will imply a promise on his part to remunerate the other party for what has been done, and support an action upon such implied promise. (2 Pars. on Con., 35.)

This case falls exactly within this principle of law. Through whose default was it that the work was not completed according to the contract? Certainly not that of Hitchings, the contractor; for he was ready and willing, and was in act of performing when prevented by the destruction of the building. He was a mere laborer upon the building, having no possession or control over it for any other purpose; and the destruction of it was through no act or agency of his. Manifestly the performance of the contract was prevented by the default of the other party, who furnished and provided the building upon which the work was to be done as far as the work had progressed, but failed to furnish or provide it for the completion of the work. It was his building, in his possession, and under his exclusive con-

trol; and, as a material and substantive part of his contract, he was to have it in existence ready for the work, and continue it in existence, and in a proper condition for the work to be performed upon it, as long as it was necessary under the contract, or as long as the contract was continued in force by the consent of the respective parties. If one party agrees with another to do work upon his house, or other building, the law implies that the employer is to have the building in existence upon which the work contracted for may be done. It is necessarily a part of the contract on the part of such employer, whether it is specified in it in terms or not. Here the defendant's testator failed to provide and keep the building till the work could be completed, and thus, and thus only, was performance prevented.

It is nothing whatever to the case to say that the building was not destroyed through his agency or fault. That fact is no test of the liability in an action like this. It would not excuse or shield the defendants from liability even were the action to recover as damages the profits which might have been made on that part of the work the performance of which was prevented. The destruction was not caused by the act of God, as appears by the facts found; and a default from any other cause will not excuse non-performance.

This rule was applied and enforced by this court in *Tompkins* v. *Dudley* (25 N. Y.) very properly, undoubtedly, though the case was a very hard one for the defendants. The school-house which they had contracted to build was substantially finished, according to the contract, but it had not been accepted by the plaintiffs, a small amount of painting and the hanging of the window-blinds remaining to be done before the job was finished. In this situation the house took fire and was destroyed, and the plaintiffs were allowed to recover back moneys they had advanced on the contract, and damages for its non-performance. It was a casualty not provided against in the contract, which the defendants had bound themselves fully to perform. This rule, it will be seen, applies with full force against the defendants in this action, but in no respect is it applicable to

the plaintiffs. The defendant's testator was to provide the building in which the work was to be done. That was part of his obligation, and he had not provided for the contingency of its accidental destruction during the continuance of the work, by his agreement. The plaintiff's assignor had no occasion to provide, in the contract, for the default of the other party in the performance of his part of the obligation. The law provides for that. It was never heard that the contract must provide against the default of a party, in order to give a remedy to the other party who is affected injuriously by it; unless, indeed, some extraordinary remedy is sought which the law, without an express stipulation, does not give. The obligation of the defendant's testator seems to have been entirely overlooked in the Supreme Court, or else it was assumed that the destruction of the building did not place him at all in default, unless he had some agency in such destruction, by which the performance was prevented. This I regard as a fallacy, and it is this, obviously, which produced the erroneous judgment against the plaintiff.

The case of *Menetone* v. *Athawes* (3 Burr., 1592) is very much in point here. The plaintiff was employed to make certain specified repairs upon a vessel lying at his own shipyard. Before the repairs were fully completed a fire broke out in a neighboring store and extended to the vessel and destroyed it. The defendant in that case, as in this, contended that the plaintiff could not recover, because his agreement to repair was not fully performed. But it was held that the plaintiff was entitled to recover *pro tanto* for the work and materials, as far as he had gone, in the performance of his undertaking. This seems to be the settled rule in all cases between bailor and bailee when the article is delivered to the latter, to be repaired or wrought into a new form, and is accidentally destroyed before the work is finished and ready for delivery, without the fault of the mechanic. The loss in such case falls upon the owner of the article, and he must answer for the labor already bestowed and the materials if any, furnished. (2 Kent's Com., 590; Story on Bailments §426, *a; Gillett* v. *Mawmen,* 1 Taunt., 137.) It may per

haps be different in such a case, where the work is done upon an express contract as a job, because the owner by delivering the article to the mechanic has done all he could do. He has performed so far all that was within the contemplation of the parties, and all the law could require of him, and it would be impossible for the mechanic in possession to allege that he was prevented from performing by any act or default of the owner. (See Story on Bailments, § 426, *b.*) His non-performance in that case not being occasioned by the act or default of the other party, it is difficult to see how, according to our rule, he could maintain the action. But it is manifestly entirely different where the owner of the property retains possession and contracts for work to be done upon it while in his own custody. In such case there is an implied obligation resting upon him to have it on hand and in readiness for the labor to be performed upon it. That is the case put by WILMOT, J., in *Menetone* v. *Athawes* (*supra*), "of a horse which a farrier is curing, and which is burned in the meanwhile in the owner's own stable," as one in which the owner would undoubtedly be liable for the skill and care bestowed. The work is not completed because the owner, whose duty it is to keep the article on hand in order to receive the labor and skill upon it, fails to do so and is in default. That is this case in effect. The difference in the nature of the property upon which the work was to be performed does not affect the principle.

When full performance is prevented by the authority of the State, the party may recover for his labor and materials up to the time the State interferes and stops the work (*Jones* v. *Judd*, 4 Comst., 411.) I lay no stress whatever upon the fact, that the owner used the building more or less while the work was in progress, because in this State the rule is well settled that use and occupancy constitute no ground of liability if the contract is not performed. (*Brady* v. *Smith*, 17 N. Y., 173.) And if the non-performance was occasioned by the act or default of the other party, use and occupancy are of no moment. Nor is it of any consequence, in my judgment, that the defendant's testator kept

the iron pipes, which the other party had placed in the building, and sold them after the fire. They were clearly his property, made so by being placed in his building under the contract. And his using them or disposing of them after the destruction of the building does not, in any way that I can perceive, affect the question of his liability.

I rest the right of the plaintiff to maintain his action distinctly upon the ground that his assignor was prevented from performing his contract by the default of the other party in failing to keep on hand and in readiness the building in which the work was to be done, and that the other party was clearly in default whether the building was destroyed with or without fault on his part. If these views are correct the action should have been sustained, and the plaintiff allowed to recover for his labor and materials, according to the contract, as far as he had gone, deducting the amount paid and perhaps any damages which the owner may have sustained in consequence of the non-performance by the time stipulated in the contract. The judgment must, therefore, be reversed, and a new trial granted, with costs to abide the event.

All concurring,

Judgment reversed.