WILLIAM C. KINGSLEY et al., Appellants and Respondents, *v.* THE CITY OF BROOKLYN, Appellant and Respondent.

The provision of the act of 1871 (§ 6, chap. 47, Laws of 1871), in reference to providing the city of Brooklyn with a further supply of water, which makes it the duty of the permanent board of water and sewerage commissioners to proceed to carry into effect the plan for that purpose, "provided the whole expense thereof shall not exceed the sum of $1,400,000," limits the liability of the city to the amount specified.

Accordingly *held*, in an action against the city for work done under a contract, made in pursuance of said act, that the recovery was properly limited to the unexpended balance of the sum so appropriated.

It appearing, however, that certain expenditures had been improperly made and charged against the fund, *held*, that in ascertaining such balance these charges were properly rejected.

The act of 1875 (chap. 258, Laws of 1875), amendatory of said act of 1871, authorizing the board of city works, upon approval by the common council of the plans, specifications and estimates therefor, to complete the reservoir begun under the original act, and to issue bonds therefor not exceeding $500,000, was not a ratification of former illegal expenditures made beyond the amount first limited.

A legislative enactment will not be held to be a ratification of illegal acts in the performance of work authorized by a prior act, unless the intention so to ratify is apparent and beyond question.

By the plans and specifications submitted to and approved by the common council, referred to in said provision of the act of 1871, power was reserved to the board of water and sewerage commissioners, through its chief engineer, to vary the details; and the contract for the work so provided, and obligated the contractors to follow the instructions of the engineer in respect to any alterations in the plan. Changes and alterations were made under direction of the engineer, which were important and material, but which did not change the substantial character of the work. In an action to recover for work done under the contract, *held*, that the power so reserved was lawful; and that the changes made, in the absence of proof that they were in any way influenced or controlled by the contractors or by any corrupt or wrong motives, did not impair or affect the right of the contractors to recover for the work done.

By the contract piles for a dam were to be driven a specified depth, for a price fixed; by direction of the engineer the piles were driven to a less depth. *Held*, that the contractors were entitled to the contract price; that if defendant required and accepted a less amount of work than that specified it was not entitled to a rebatement in consequence.

Also, *held*, that the fact that public notice was not given, inviting proposals for the work, did not invalidate the contract; such notice is requisite only in cases where by express enactment it is required.

The contract provided that a percentage of the moneys earned should be reserved until the contract was completed, duly certified to and accepted; before the completion plaintiffs were driven from the work by defendant's agents. *Held*, that they were entitled to recover for the work done without producing a certificate.

Where performance by one party to a contract is prevented by the acts of the other party non-performance is excused.

(Argued June 16, 1879; decided September 17, 1879.)

THESE are cross appeals from a judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought to recover for work and labor alleged to have been performed and for materials furnished by plaintiffs under and in pursuance of a contract between the parties for the construction of what is known as the "Hampstead Reservoir."

The facts appear sufficiently in the opinion.

*B. F. Tracy* and *Joshua M. Van Cott*, for plaintiffs. Defendant having prevented a performance of the contract cannot raise the objection that it was not performed. (*Hockister* v. *Delatour*, 20 Eng. Eq.; *Burtis* v. *Thompson*, 42 N. Y., 246; *Shellington* v. *Howland*, 53 id., 372; *People* v. *Bartlett*, 3 Hill, 570; *Heine* v. *Meyer*, 61 N. Y., 171; *Niblo* v. *Binsse*, 1 Keyes, 476.) The final certificate having become impossible by defendant's act plaintiffs could recover without it. (*Omaha* v. *Hammond*, 4 Otto, 98; *McMahon* v. *Erie R. Co.*, 20 N. Y., 463; *Bowery Bank* v. *Mayor, etc.*, 63 id., 339; *Phillips* v. *Seymore*, 1 Otto, 653; *Thomas* v. *Fleury*, 26 N. Y., 26; *Devlin* v. *Second Av. R. R. Co.*, 44 Barb., 81–84.) Defendant could not recoup payments made to plaintiffs on demand made by them in good faith as earned under the contract. (*Knowlton* v. *Congress Spr. Co.*, 57 N. Y., 518; *Flower* v. *Lance*, 59 id., 603–610; *N. Y. and H. R. Co.* v. *Marsh*, 12 id., 308; *Harmony* v. *Bingham*, id., 100; *Supervisors* v. *Ellis*, 59 id., 620.) The act of 1875 (chap. 258) ratified everything done

by defendant under the act of 1871 (chap. 47) deemed to be in excess of its power.. (Cooley on Const. L., 374–379; 56 N. Y., 261; Dillon on Mun. Corp., § 46; Ang. & A. on Corps., 264 a; 19 N. Y., 218; 21 Wis., 217; 5 Otto, 644, The Reporter, 257–259; *Brown* v. *Mayor*, 63 N. Y., 239; *Nelson* v. *Mayor*, 63 id., 535–545; *Thomson* v. *Lee Co.*, 3 Wall., 327–331; *Campbell* v. *City of Kenosha*, 5 id., 195; *Supervisors* v. *Schenck*, id., 772; *City* v. *Lamson*, 9 id., 478–485; *Union Pacific R. Co.* v. *Hall*, 1 Otto, 343, 353; *Hasbrouck* v. *City of Milwaukee*, 21 Wis., 217; Dillon on Mun. Corp., §§ 46,.385; Cooley on Const. L., 375; *People ex rel.* v. *Flagg*, 46 N. Y., 401.) ·Defendant's acts having been ratified by the Legislature, the obligation incurred therefor became a valid debt, payment of which could be enforced by an appropriate action. (Ang. & A. on Corp., § 264 a; *White Water Canal Co.* v. *Valette*, 21 How. [N. S.], 414; *People* v. *Brooklyn*, 22 Barb., 404; *Foot* v. *City of Salem*, 14 Allen, 87; Sedgwick on Statutes, 531; *Sibley* v. *City of Mobile*, 4 American Law Times R. [N. S.], 226; *City of Galena* v. *Amy*, 5 Wall., 708; High on Equity Remedy, § 397; *Supervisors* v. *United States*, 4 Wall., 435; *Marsh* v. *Town of Little Valley*, 64 N. Y., 112; *Cummings* v. *Brooklyn*, 11 Paige, 569; *Beard* v. *Brooklyn*, 31 Barb., 142; *Baldwin* v. *Oswego*, 2 Keyes, 132; *Ganson* v. *Buffalo*, 1 id., 454; *Hines* v. *Lockport*, 50 N. Y., 239; *Stark* v. *Miller*, 54 id., 528; *Dannat* v. *Mayor*, 66 id., 589; *People* v. *Supervisors of Otsego*, 51 id., 401; *People* v. *Supervisors of Livingston*, 68 id., 114.) The court should modify the judgment by raising it to the amount of the balance of the principal sum found to be due, with interest. (66 N. Y., 506, 517; Code, § 1317; *Andrew* v. *N. J. Steamboat Co.*, 11 Hun, 490; *Edwards* v. *Aberayon Mut. Ins. Co.*, L. R. [1 Q. B. Dec.], 563, 581; *Browning* v. *Prov. Ins. Co. of Canada*, L. R. [5 Privy Council App.], 263. 376; *Alvord* v. *U. S.*, 5 Otto, 356–359; *Lee* v. *Adsit*, 37 N. Y., 78, 98; *Schafer* v. *Reily*, 50 id., 61, 69; *Canaday* v. *Simar*, 55 id., 453, 456; *Greene* v. *Warnick*, 64 id., 220–227; *Millard* v.

*McMullin*, 68 id., 610, 613; 12 id., 336; 28 id., 508; 46 id., 627–635; 57 id., 560; 59 id., 244.)

*Jno. E. Parsons* and *William C. De Witt*, for defendant. Plaintiffs cannot claim the right to retain the amount paid for work outside of the common council plan as voluntarily paid. (*People* v. *Fields*, 58 N. Y., 505; *Board Supervisors* v. *Ellis*, 59 id., 620.) Those who deal with a corporation are chargeable with notice of the limitation of official authority imposed by law, and are absolutely governed by such limitation. (*Hodges* v. *Buffalo*, 2 Den., 110; *Starin* v. *Town of Genoa*, 23 N. Y., 449; *Donovan* v. *Mayor, etc.*, 33 id., 293; *Bigler* v. *Mayor, etc.*, 9 Hun, 253; *McDonald* v. *Mayor, etc.*, 68 N. Y., 23; *Farmers' Loan and Trust Co.* v. *Carroll*, 5 Barb., 649; *Brady* v. *Mayor, etc.*, 2 Bosw., 183; affirmed, 20 N. Y., 312.) The principle of *quantum meruit* cannot be applied. (*Haughwout* v. *Mayor*, 2 Abb. Ct. of App., 355; *Donovan* v. *Mayor*, 33 N. Y., 291; *McDonald* v. *Mayor*, 68 id., 23.) A municipal corporation is not bound by a payment made by its officers or agents in excess of legal authority. (*Board of Supervisors* v. *Ellis*, 59 N. Y., 620–625; *People* v. *Field*, 58 id., 505; *Donohue* v. *Mayor*, Sup. Ct. R., May pamphlet; Laws of 1865, chap. 721, §§ 6, 7; Laws of 1854, chap. 384, § 15, title III; *Donovan* v. *Mayor*, 33 N. Y., 291.) The act of 1871 limits the amount to be expended in the construction of the storage reservoir to $1,400,000. (*In re Second Ave. M. E. Church*, 66 N. Y., 398, 399.) There can be no implied liability of the city beyond that sum. (*McDonald* v. *Mayor, etc.*, 68 N. Y., 23; *Donovan* v. *Mayor, etc.*, 33 id., 291; *Kingsley* v. *City of Brooklyn*, Gen. Term, City Court, Brooklyn.) This court has no power to enlarge the judgment. (Code, §§ 1320, 1321.) The contract was invalid because the work was not let by public competition. (Laws 1862, p. 200; Laws 1865, p. 1437; Laws 1859, p. 924; Laws 1869, p. 168.) Failure to produce a certificate that the work as far as done was accepted by the water board

was fatal to plaintiffs' claim. (*Ellis* v. *Mortimer*, 1 B & P. N. R., 257; *McCarren* v. *McNulty*, 7 Gray, 139; *Aïken* v. *Hyde*, 99 Mass., 183; *Goodrich* v. *Van Nortwich*, 43 Ill., 336; *Hunt* v. *Leyman*, 100 Mass., 198; *Draper* v. *Jones*, 11 Barb., 263; *Heron* v. *Davis*, 3 Bosw., 336; *McMahon* v. *R. R. Co.*, 20 N. Y., 463; *U. S.* v. *Robeson*, 9 Peters [U. S. R.], 319; *Smith* v. *Briggs*, 3 Den., 73; *Wyckoff* v. *Meyers*, 44 N. Y., 143; *Glacius et al.* v. *Black*, 50 id., 145; *Grube* v. *Schuttherss*, 4 Daly, 207.)

MILLER, J.  The work performed by the plaintiffs, and for the payment of which a recovery is sought in this action, was done by virtue of a contract entered into by them on the 9th day of January, 1872, with the defendant by the Permanant Board of Water and Sewerage Commissioners of the city of Brooklyn, who were duly constituted officers of the defendant for that purpose.  The authority for the construction of said work is derived by virtue of chapter 652, Session Laws of 1870, and chapter 47, Session Laws of 1871. The former act made provisions for amending chapter 97 of the Laws of 1869, re-organizing the board of water and sewerage commissioners of the city of Brooklyn.  Section 5 made it the duty of the commissioners to prepare and submit to the common council a plan for furnishing an increased supply of water for said city, and for the extension of the present works and the construction of such further reservoirs, etc., as might be necessary for that purpose, together with an estimate of the probable expense thereof.  It also authorized them to examine such plans and estimates to determine what would be the most expedient; to adopt a plan and to carry such determination into effect, and directed them to acquire title to such lands as might be necessary.  Section 6 of the same act provided for the issuing of bonds of the city for the payment of the expenses authorized by said act.  By virtue of the provisions section 6 (*supra*), a plan was prepared by the commissioners, submitted to the common council and received their sanction and approval.  The act of 1871 (*supra*),

was then passed for the evident purpose of carrying into effect the plan which had been previously adopted by the common council. The first section of this act declares : "It shall be the duty of the Permanent Board of Water and Sewerage Commissioners of the city of Brooklyn to proceed to carry into effect the plan for the furnishing an increased supply of water for said city, and for such extension of the present water-works of said city, and the construction of such further reservoirs, conduits and other structures as may be necessary for that purpose, heretofore submitted by the said board to the common council of the city of Brooklyn and approved by a resolution of the board of aldermen of said city, on the eleventh day of July, eighteen hundred and seventy, provided the whole expense thereof shall not exceed the sum of one million four hundred thousand dollars, and which said resolution was finally adopted by the common council of said city, by a two-third vote, on the twelfth day of December, eighteen hundred and seventy. " The same section further provided for the acquisition of lands, ponds and streams as might be necessary ; the approval of the purchases made by the common council and that the board of water and sewerage commissioners should cause the necessary work to carry the plan into effect to be done and should employ proper persons to inspect the same. The effect of this provision was, I think, to limit the liability of the city to the amount named in the act, $1,400,000, and to carrying out the object and purposes of the law, and no construction, in my opinion, authorizes an increase of expenditures beyond that amount. (*Matter of Second Avenue M. E. Church*, 66 N. Y., 398.) The word "provided" employed in the section cited was intended as a limitation, and any different construction would leave the amount to be expended entirely without limit and might lead to the most wasteful and extravagant expenditure. The argument of the plaintiffs' counsel therefore that "provided" should be read "providing," and that the recital of the two resolutions should be read in parenthesis is not authorized, and would sanction an interpretation

adverse to the plain intention of the law.    The claim that the
act of 1875, chapter 258, by which the city was authorized
to issue bonds to the amount of $500,000 to complete the
reservoir was a ratification of everything which had in good
faith been done and of expenditures made beyond the amount
of $1,400,000, is not based upon any sound principle.    Work
had been done to the amount last named, the reservoir still
remained in an incomplete and unfinished condition, and by
the act in question the Legislature recognized the existence
of the reservoir in its unfinished condition without means for
its completion, and provided means for that purpose.    By
the act last named nothing could be done without the ap-
proval of the common council.    That body refused to exer-
cise the power thereby conferred, demanded a repeal of the
act, and for completion of the dam made provision that nothing
which it had authorized or which should be done should be
regarded as an approval of that act of 1875.    It may also be
added that the act of 1875 provided for new plans, specifi-
cations and estimates for the work to be done and for a
stipulation, under suitable penalties, that the work should be
fully completed for the sum named.    It is very manifest, we
think, that this act was never intended as a ratification of for-
mer expenditures which had been made in violation of law
and without any authority.    In the reported cases in this
State which hold that an act of the Legislature may condone
an illegality under a prior act and ratify what has been done,
the intention to do so was apparent and beyond any question.
No other rule can be safely applied and there can be no rati-
fication of an illegal act under a contract sanctioned by legis-
lative provision, unless it is plainly apparent that the law was
designed for such an object.    The obligation of municipal cor-
porations for debts incurred under authority of law should be
enforced, and courts have gone very far in compelling public
bodies to fulfill their lawful obligations.    But this principle
cannot be invoked unless it is manifest that the right of the
party to relief and the liability of the corporation is quite
clear.    It would be extending this rule beyond proper limits

to hold that under the facts here presented there was such a ratification of the amounts expended beyond the limit of the act as to authorize any recovery upon that ground.

Various objections are urged to the validity of the contract under which the work was performed, and it is insisted that the reservoir was to be built according to the plan of the common council which is referred to in the act of 1871, and such plan having been departed from in the contract, such contract was for that reason wholly void. We deem it unnecessary to state at any length the nature and extent of the specifications which accompanied the contract and which characterized the leading features of the plan therein contained. They embrace numerous provisions and a great variety of work to be done. One of the principal features which is noticeable throughout the contract, is the evident intention which is manifested to vary the design if found to be beneficial or requisite, and a number of the specifications which are particularly referred to in the opinion of the referees show most clearly that the work was to be under the especial direction of the engineer, and he was to superintend the same, from time to time give directions, and it was to be performed in accordance with his instructions. Among other things provision is made expressly for the disposition of excavated material at such points and on such areas as he may direct; for the excavation and grading of the lines as staked out and defined by the engineers; for the location of the dam as he shall direct; and that the arrangements for the disposal of the waste water, and the building of the gate chamber and gate house should be according to plans furnished together with the current directions of the engineer. The contract also provides to the effect that the provisions for wasting and delivering at the roadway dam will be different from those described in the terms of plans to be furnished the second parties as the work progresses. And, as if to carry out more fully the design to change such plan according to circumstances, an express clause is inserted that "wherever the plans require any alter-

ations from the general dimensions it shall be made as the engineer shall direct," evidently having reference to the dimensions of the stone masonry of the dam.

These, as well as other provisions of a similar character, vested in the engineer a large discretion, and in connection with those contained in other specifications (§§ 48, 49 and 59), reserved to the board, through the engineer, full power and authority to change the plan. All of these provisions were approved by the common council, and evince that it was intended to reserve to the water board, through its chief engineer, the power to vary the details of the plan as exigencies and a more careful consideration might demand  As thus changed the contractors were obliged to carry the same into effect, and the changes made, when directed by the engineer and carried into execution by the plaintiffs, could not impair or affect their right to recover. for the work done.    The referees decided, and we are not prepared to say that there is not sufficient testimony to sustain the conclusion at which they arrived, that the changes which were made under the direction of the engineer were dictated by an impartial judgment which had in view the interest of the defendant, or that it was in any way influenced or controlled by the interference of the plaintiffs or by any corrupt or wrong motive or inducement of any kind.

The power to make these changes we think is beyond question.    The right was expressly reserved by the specifications in the contract as we have seen.    These were submitted to the common council and the Legislature, and as the act of 1871 was passed, with full knowledge and in view of the same and contains nothing which prohibits or prevents a change, we are unable to discover any violation of the provisons of the contract by the alterations made.    In fact it appears from the testimony of the engineer, that it was the subject of deliberate consideration for a long time, influenced, somewhat, by a strong opposition to some of the features of the work and was evidently done in good faith and without fraud.    The changes made were important, and it is well to

recur to such of them as materially differ from the original plan contained in the contract.

The purchase of 250 acres of land, in addition to the 300 already acquired, which enlarged the area of territory, is made a ground of objection by the defendant's counsel. This was authorized by the first section of the act of 1871, which gave power to the commissioners "to acquire the title to such lands, ponds and streams as may be necessary therefor," which, evidently included, not only the lands described in the plan, but such as should be necessary to carry out the plan. The fact that the acquisition of the additional land increased the water area, and thus enlarged the excavation and resulted in a larger profit to the plaintiffs, furnishes no sufficient ground for holding that the subsequent increase of land was illegal and debars the plaintiff from recovering for the work actually done. As to the paving of the sides or slopes of the reservoir, which was given up, it does not appear in any plan or drawing submitted to the common council, but only in the specifications, which declare that it may be omitted by the engineer if at any time during the progress of the work he should deem such omissions advisable. They were first intended to be formed so that paving was required to prevent them from being washed by the action of the water. By the change made the paving became unnecessary, and by their omission the city saved $248,000, without in any respect affecting the usefulness of the work, as there is strong reason to believe. That the profit on the slopes was less than on the excavation required by the additional increase of land, furnishes no argument against the power to change the plan or its real advantage.

The omission of the intermediate or second dam was also within the power conferred upon the engineer. This was not in the contract, although mentioned in the specifications as altered by the chief engineer in submitting the same to the common council. The same specifications authorized its omission, which saved an expenditure of from $230,000 to

$240,000. It is true that the changes referred to enlarged the excavation to be made 600,000 yards, at an increased cost of $330,000, but it made a diminution of cost in the whole amounting to $153,000, which was a net saving to the defendant. It also reduced the level of thirty-two feet above tide for the surface of the reservoir, which was first deemed essential, to twenty-nine feet, thus reducing what is called the flow line some three feet, and the capacity of the reservoir about 225,000,000 gallons. This, however, would be increased to the capacity of 107,000,000 gallons by the excavation. A change in the construction of the weir, which was included in the proposition to dispense with the second dam and the increase of the excavation, contemplated that by means of flush boards the flow line could be raised to thirty feet if it was deemed essential, thus increasing the water 83,000,000 of gallons, and with the other advantages referred to, causing a loss of only 35,000,000 gallons, with a saving of $153,000 in the cost of constructing the reservoir. This result is produced without considering the quantity of water which would be held by the saturated sand which had not been considered in the estimate of capacity by one of the engineers, Mr. Kirkwood, and which Mr. Adams, another one, estimates at 125,000,000. It may be added that the flow line of the reservoir is regulated by the height of the dam, which, if required, might be raised three feet higher, so as to reach thirty-two feet.

Considerable stress is laid by the defendant's counsel upon the fact that the plaintiffs obtained fifty-five cents a yard, the contract price, for deepening the excavation, which is claimed to be very extravagant; but this is a matter which of itself is not controlling unless it is apparent that such price was fixed in fraud of the defendant's rights and by collusion, so as to render the contract invalid and void for that reason. Reserving for consideration hereafter the question of extravagance and fraud, it is sufficient to say that unless these are established the objection last considered is not conclusive and is entitled to but little weight.

The purchase of the additional land, which increased the area of territory and enlarged the excavation; the omission of the paving of the slopes of the reservoir; the omission of the second dam, as well as the change of the capacity of the reservoir; were alterations warranted by the terms of the contract and did not change the substantial character of the work. These changes were really made in conformity with its conditions, and the referees found that the chief engineer deemed each of them necessary and proper; that he acted in good faith, and that none of them were made with the intention of benefiting the plaintiffs or for the purpose of increasing their profits. It is not shown satisfactorily that any of them were made by the plaintiff's procurement, as the defendant had a right to require such changes, and the plaintiffs had no alternative but to comply with the requirements of the chief engineer, who represented the city in this respect. There is, therefore, no valid ground for holding that the failure of the plaintiffs to perform the work as demanded by the original contract is a defense to their right to recover, or that their compliance with the alterations made can be interposed to defeat their claim.

The claim made that any of these changes, and especially that of the dropping of the flow lines, was *ultra vires*, is, we think, entirely unsupported. They were clearly within the scope and object of the contract and the plan, which was the construction of a storage reservoir, and the alterations made as to the details did not, we think, constitute such a departure from the object in view as to affect the right to maintain an action for the work actually done under the requirements of the engineer. The doctrine contended for has, we think, no application to the facts presented, and especially when it appears as is the case here, that power was conferred to change the plan as to the amount and quality of any portion of the work to be done.

It is also insisted that there were other indisputable changes and departures from the contract for which the plaintiffs received money unlawfully, and it is said that the

city's own gravel was used instead of the small or broken stone required by the contract. The finding of the referees shows that gravel was substituted for stone, and as they allowed a less amount than the contract provided and the prices fixed by the chief engineer as a fair and proper sum for the same, it is to be presumed that they took into consideration the value of the gravel taken which belonged to the city.

In regard to the piles for the dam which were to be driven twenty-four feet and were only driven sixteen feet, the change was made by the direction of the engineers, and it does not appear that it was detrimental to the work. The case does not show that any particular point was made to the effect that the amount should have been deducted, or that any proof was given showing wherein the difference consisted. As the plaintiffs did the work by the direction of the engineer and with his approval, no deduction could lawfully be claimed, and they were entitled to their pay. If the defendant chose to prescribe a less amount of work for a given purpose than was required as to this particular item, it does not authorize a claim that the specific work shall be paid for at a less rate than the contract provided, as a general rule, in the absence of fraud. The defendant had a right to demand the very work specified, and if it accepted anything less as sufficient for the purpose named, has no right to insist that a rebatement should be made for that reason.

It is also contended by the counsel for the defendant that the charge allowed for the removal of a large quantity of earth, drawn and deposited a distance averaging 1,200 feet beyond 2,000 feet from the place of excavation, is fraudulent, because the removal was unnecessary and should not have been allowed. The answer to this position is that such removal, which is called extra haul, was expressly provided for by the contract, which authorized the city, through its engineer, to designate the place of deposit of the spoil or excavation, and required the plaintiffs to deposit it as directed. Acting by his directions, the plaintiffs were not in a position

to question his authority. The plaintiffs are not proved to have influenced the directions given, and no ground is shown for questioning the good faith of the engineer according to the findings of the referee on the evidence.

The claim that it was not put in the monthly estimates, and that it is thereby waived, is not well founded, and the plaintiffs are not thereby estopped from making this demand. This work appears to have commenced in 1872, and no claim was made until 1874, although from time to time prior to this date compensation was claimed of the resident engineer under the contract. It was first denied by the chief engineer, submitted to arbitrators under the arbitration clause in the contract, although their award was excluded upon the trial as evidence, under the defendant's objection. The quantity was proved, and no valid reason is presented for its disallowance. That the omission to present it allowed other work to be done and so reduced the appropriation, does not of itself affect its validity. The case of *Dickinson* v. *The City of Poughkeepsie** is relied upon by the defendant's counsel, but we think this decision is not in conflict with the views expressed.

Other objections are urged against the right of the plaintiffs to maintain this action, and it is claimed that the contract was invalid, inasmuch as the work was not let out for public competition. There is nothing in the provisions of the various acts relating to the subject which requires that this should be done, and the law as to such a case does not demand that public notice should be given of proposals for the work. It is only in cases where an express enactment is made to that effect that such notice is demanded.. (*Green* v. *The Mayor*, etc., 60 N. Y., 303.) The water board was then under no restrictions in this respect in letting out the work in question, and unless fraud is established, it is not material whether the bids were open to public competition or -otherwise. The Permanent Board of Water and Sewerage Commissioners, upon whom the power was conferred to

---

*75 N. Y., 65.

cause the work to be done and carry the plan into effect, had authority to let the contract upon such terms as they deemed most advantageous to the city, and were under no obligation to throw open the bidding to all competitors. That they restricted the bidding to a few well-known con- tractors, did not necessarily affect the validity of the con- tract. The proof as the referees found, did not show collusion among the contractors, nor that the plaintiffs in any manner sought to influence improperly the decision of the water board. The testimony establishes that the plaintiffs were the lowest bidders for the work in the aggregate, there being five bids in all, and no collusion or conspiracy among the contractors was attempted to be shown.

In regard to the prices fixed in the contract for deepening the excavation — which is a proper subject for consideration in this connection — it appears that the bids were respectively as follows: One bid for eighty cents; one for seventy-five cents; two for sixty-seven cents, and another at sixty-five cents per cubic yard. The plaintiffs' bid was sixty-seven cents. The lowest bid of all, sixty-five cents, was by one Freel, whose aggregate bid was larger than the bid of the plaintiffs. The engineers were of the opinion that the price for excavation in all of them was too high; that fifty-five cents per cubic yard was sufficient, and the plaintiffs' bid with that reduction was finally accepted, and the contract entered into on this basis. Considerable testimony was taken upon the trial, and there was a conflict as to the actual fair value of the work done. The question was one upon which there might well be a diversity of views and a difference of opinion. The referees came to the conclusion that the charge of fraudulent excess of price was not sustained, and there is no ground, we think, for a reversal of their determination in re- spect to this question of fact which was presented by the proof.

It is also insisted that the contract was fraudulent in its inception, and that in its execution there was a series of frauds which effectually preclude a recovery. The charges of fraud, conspiracy and collusion are set up in the answer and con-

stituted an important element in the defense interposed to the plaintiffs' cause of action. The substance of the allegation appears to have been that the water board and engineer acted in combination with the plaintiffs to defraud the city. The project to increase the water supply of the city of Brooklyn had been a subject of discussion for a number of years, and the plan finally determined upon appears. not only to have received the recomendation of the water board, and engineers of great skill and distinction who had given the subject a full examination, but was approved by the common council, afterwards sanctioned by the Legislature and directed to be carried into effect. Considerable discussion was had, statements were made by public officials in relation to the subject, and in 1876, in a proceeding by mandamus on the part of the city to compel the board of city works to complete the facing of the dam, an affidavit of the mayor and president of the board of public works was read, showing that there was great danger of the supply of water being inadequate for city purposes for the then coming year, unless the dam was completed. These statements tend to show good faith and that no fraud was intended, in endeavoring to secure an increased supply of water.

Allegations of fraud against public officials, without proof of facts establishing their guilt, are of but little avail in avoiding a contract in a court of law. To set aside a contract upon any such ground, and to justify a court in holding as a matter of law that it is void, the proof should be explicit, clear and conclusive. Without such evidence, it is not the province of a judicial tribunal to declare a contract fraudulent and void. As the case stood upon the evidence it was a question of fact to be decided by the referees; and the testimony relating to this branch of the defense appears to have received a careful and full consideration, and their determination arrived at is conclusive upon the question considered.

The objection urged as to the failure to produce a certificate that the work so far as done was accepted by the

water board cannot, we think, be upheld.  The contract provided for reserving a portion of the money — fifteen per cent — until the contract was completed and duly certified · to, and the remaining ten per cent at the expiration of six months from the final acceptance of the work.  The paving of the dam was left incomplete, the slopes of the reservoir not paved, the forty-seven acres below Nichol's pond untouched, the surface of the ground not cleared, the buildings not all removed, the spoil banks not smoothed, and the work was incomplete.  But the proof shows that the plaintiffs were driven from the work by the defendant's agents; and the referees found that they performed the contract until stopped, and were entitled to recover without producing the certificate.  This finding was clearly right, if the acts of the defendants arrested the further prosecution of the work.  A party who prevents performance of his own act is in no position to object that the contract remained unperformed.  (*Hockister* v. *De Latour*, 20 E. L. & Eq., 157, 160; *Burtis* v. *Thompson*, 42 N. Y., 246.)  The rule is also well settled that where performance is rendered impossible by the act of the law or of the other party, non-performance is excused.  (*Shellington* v. *Howland*, 53 N. Y., 372; *Heine* v. *Meyer*, 61 id., 171; *Niblo* v. *Brinsse*, 1 Keyes, 478.)

By the act of the defendant in preventing the plaintiffs from proceeding with the work, it became impossible for the plaintiffs to complete the same.  Under such circumstances, we think that they were entitled to recover without the certificates.  (*Bowery National Bank* v. *The Mayor*, 63 N. Y., 339; *McMahon* v. *Erie Railroad Co.*, 20 id., 463; *Thomas* v. *Fleury*, 26 id., 26.)

The position that the plaintiffs were not prevented by the defendant from performing certain portions of the work and obtaining the requisite certificates of the water board is not well taken, as the proceedings of the defendant in obtaining possession precluded the performance of further work.  The plaintiffs only recovered for the work actually performed, and not for that which remained unfinished; and as per-

formance of the entire work contemplated and included in the contract was prevented by the act of the defendant, there is no ground for claiming that they should not be paid for that which was actually done.

The result of the discussion had leads to the conclusion that the plaintiffs were entitled to recover to the extent of the unexpended appropriation for the work actually performed.

The referees found that certain expenditures were improperly charged against the appropriation and deducted such amounts from the fund. We concur with the referees as to the correctness of their statements of the sums which should be charged against the fund which had been misapplied, and we think that no error was committed in this respect.

The plaintiffs' appeal from a portion of the judgment, by which they seek to increase the amount of the judgment in their favor and to affirm the judgment as modified, must fail, for the reason, as we have seen, that no recovery can be had beyond the balance of the amount of expenditure authorized by the act of 1871. In this aspect it is not necessary to determine whether the court have power to modify the judgment by increasing the amount of the plaintiffs' recovery.

The facts connected with the case considered appear to have been thoroughly investigated upon the trial before the referees. The testimony taken upon the trial, and upon which the case was decided, was conflicting, and covers a wide field of inquiry. The appeal papers contain nearly 2,000 pages, and it is manifest that all the questions raised were most carefully considered by the referees, one of whom for many years filled high judicial positions, and at one time was a judge of the highest court in this State, distinguished alike for his learning, ability and integrity An elaborate opinion discusses fully the facts and the legal questions involved, and with the prevailing opinion of the General Term of the City Court of Brooklyn, by NEILSON J., with which we mainly concur, leaves no field for further discussion.

We have examined all the questions presented, and discussed such of them as we deem material for a proper and just disposition of the case, and are of the opinion that the judgment should be affirmed, with costs on each appeal.

All concur.

Judgment affirmed.