PEOPLE ex rel. READY *v.* MAYOR, ETC.     321

Fourth Department, October Term, 1892.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. PATRICK READY, Appellant, *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF SYRACUSE AND Others, Respondents.

*Municipal corporations — rights of a contractor enforceable by* mandamus *against a city — final certificate of a city engineer, in the absence of fraud the city cannot attack it.*

In a proceeding by a contractor to enforce, by *mandamus*, payment by a city for the construction of a sewer, it appeared that the contract was completed; that the city engineer had certified thereto, and to a final estimate of the work; that thereupon the common council had adopted a resolution declaring its intention to issue bonds to pay for the work; that an assessment-roll, based upon an apportionment of the expense of the work, had been left with the city treasurer, and that about one-fourth in amount of the lot owners had paid to him their assessments.

The defense of the city was that the work was improperly done, and practically useless to the owners of adjacent property, and that the certificate of the engineer had been given under a mistake as to the fact of performance. It further appeared that the contractor could not sue at law, because by the contract he was not to be paid by the city until the taxpayers had paid their assessments.

*Held,* that the contractor could maintain the proceeding by *mandamus.*

That as it was agreed that the engineer should supervise the work, and that his certificate should be conclusive upon the question of payment, and as no fraud was alleged or shown, the final certificate of the engineer was binding on the city and could not be attacked by it.

That as the facts showed an opportunity to the city to inspect and direct the work, and that such direction had been given by it; its acceptance of the work on the approval, in effect, by the common council of the return of the engineer, and the voluntary payment by parties assessed of a considerable sum of money, it was the duty of the city to pay to the contractor the sum collected and to issue the contemplated bonds.

Appeal by the relator, Patrick Ready, from a judgment and final order of the Supreme Court, entered in the clerk's office of Onondaga county on the 18th day of April, 1892, denying his application for a writ of peremptory *mandamus*, with notice of an intention to bring up for review upon such appeal said judgment and final order, and an order of said court, entered in said clerk's office on the 18th day of April, 1892, which denied the relator's application for judgment upon an alternative writ of *mandamus*, and directed that the issues be tried before the court at the January Circuit, 1891.

322    PEOPLE ex rel. READY v. MAYOR, ETC.

Fourth Department, October Term, 1892.

The case was tried at the Onondaga Circuit by the court.

August 8, 1890, an alternative writ was allowed at the Special Term and a return was filed to the writ September 5, 1890. In behalf of the relator it was alleged that he was a contractor with the city for the construction of a thirty-six-inch brick sewer in Spruce street, from Washington to East Fayette street, and in East Fayette street, from Spruce to Beech street; that he had completed the contract; that the city engineer had certified to such completion and to a final estimate therefor; that the common council, upon the receipt of such certificate, had adopted a resolution declaring its intention to issue local-improvement bonds to pay for such improvement under the provisions of the city charter; that an assessment-roll for such improvement was left with the city treasurer after the appointment of appraisers and the apportionment of the expenses upon the several lot owners; that the treasurer had received and collected $1,371.19 on account of said improvement; that no further proceedings have been taken by the defendants to collect the balance, and that the relator had not received the $1,371.19, nor any part of it; that the relator asked to have the writ command the payment of the $1,371.19, the issuing of the bonds specified in the resolution and the application of the proceeds to the payment of the costs of the improvement, and that the collection of the taxes upon the said assessment-roll remaining unpaid be enforced.

There was a return to the writ which admitted the execution of the contract, and averred that the relator undertook to perform the work and furnish the materials referred to in the contract, but that he had failed and neglected so to do, and had so performed the work and built the sewer as to make it practically useless and of no benefit whatever to any of the owners along the line of the improvement. The return also alleged that the certificate given by the city engineer was given under a mistaken idea of the facts, and was erroneously and incorrectly made. It alleged that upon the receipt of said certificate the common council directed the costs of the improvement to be assessed upon the property along the line of the sewer, and passed a resolution to that effect on the 31st of March, 1890. A peremptory writ was refused on motion and a trial ordered at the circuit in January, 1891; and a trial was had, a jury having been waived, before the court. After hearing

the evidence offered by the relator, and the evidence offered by the defendants, the court made and filed a decision denying the writ, with costs. From the judgment entered upon such decision this appeal was taken.

As matter of fact the court found : " That on or about December 23, 1889, said City Engineer made a certificate in writing to the common council of the City of Syracuse, to the effect that said work had been performed, and said sewer constructed in accordance with the terms of said contract." It also found : " That said certificate of said engineer so given was erroneous, incorrect, false and untrue." Also : " That, as appears by the said certificate and final account of said Engineer, the costs of the construction of said sewer amounts to the sum of five thousand two hundred and forty-one dollars and twenty-five cents ($5,241.25)." Also : " That, upon the coming in of said certificate and final account, and relying upon the truth of the matters therein contained, and in the belief that said contract had been fully performed by the relator, the Common Council of the City of Syracuse passed the following resolution on the 31st day of March, 1890 :

'*Resolved*, That this counsel hereby declares its intention to issue local improvement bonds to such portion of the cost of constructing a brick sewer in East Fayette street from Beach to Spruce streets, and in Spruce street from East Fayette street to East Washington street as shall be proper under the provisions of section 142 of the city charter, as amended by the Laws of 1888 ; and the city treasurer is hereby authorized and directed to issue tax notices therefor in accordance with this resolution.'

" That said common council, in like reliance upon said account of said engineer, directed the cost of said sewer to be assessed upon the property benefited by the construction thereof, and the same was so assessed by the city assessors, and the assessment-roll left with the city treasurer, and he has received the sum of one thousand three hundred and seventy-one dollars and nineteen cents ($1,371.19) " from parties owning lands along the line of the sewer who were assessed therefor.

The court found as conclusions of law as follows :

" *First*. That any change or alteration, made or consented to by relator, of the said city engineer in the construction of said sewer, or in the depth or grade of the same from that provided for by said

324     PEOPLE ex rel. READY v. MAYOR, ETC.

FOURTH DEPARTMENT, OCTOBER TERM, 1892.

contract, plans, specifications and profiles, was illegal and unauthorized by law, and not binding on the city of Syracuse or the common council of that city.

"*Second*. That the certificate or final account submitted by said city engineer on the 23d day of December, 1889, was not conclusive or binding on the city of Syracuse, and that said city of Syracuse, or the common council of said city, was not estopped by said certificate or account from denying the performance of said contract.

"*Third*. That the work as performed, and the sewer as constructed by said relator, was not a substantial compliance with the terms of said contract.

"*Fourth*. That the common council of said city was in no way estopped from rescinding the intent and directions expressed in the said resolution of March 31, 1890.

"*Fifth*. That the city of Syracuse cannot be compelled to issue bonds for the purpose of raising money to pay the balance of said assessment, or any part thereof.

"*Sixth*. That the city of Syracuse cannot be compelled to issue a warrant for the collection of the balance of said assessment remaining unpaid, or any part thereof.

"*Seventh*. That the city of Syracuse cannot be compelled to pay the relator any moneys received by it from the property owners assessed for the construction of said sewer." Exceptions were duly taken to such findings of law.

*M. M. Waters*, for the appellant.

*Charles E. Ide* and *C. G. Baldwin*, for the respondents.

HARDIN, P. J.:

According to the notice calling for bids and specifications and the contract between the parties, payment for the work in question was not to be made "until the same shall have been completed and the cost assessed and collected from the taxpayers owning property liable to taxation for the construction of said work." In the contract between the parties it was agreed as follows: "That no payment shall be made to the party of the first part (relator) under this contract until the cost of said work shall have been ascertained and assessed upon and collected from the taxpayers liable to local taxation for the same."

PEOPLE ex rel. READY v. MAYOR, ETC.     325

Fourth Department, October Term, 1892.

The contractor, under the provisions of his contract, therefore, was not in a situation to maintain an action at law for the recovery of the contract-price. (*Hunt* v. *The City of Utica*, 18 N. Y., 442.) The contract provided in terms that the work should be carried forward in the view and under the direction of the city engineer. It expressly provided that "all plans, explanations or directions necessary to the carrying out and completing satisfactorily the different descriptions of work contemplated and provided for under this contract will be given by the said engineer, and such plans and directions shall in all cases be complied with. And it is hereby mutually agreed between the parties hereto that the return of the said engineer shall be the account by which the amount of work done and the materials furnished under this contract shall be computed." The contract contained also a further provision that "when, in the opinion of the said engineer, the work shall have been fully completed in accordance with this agreement, the said engineer shall, as soon as practicable, make up the final account therefor, and upon his final acceptance of the work, shall return to the common council said account duly verified by him, whereupon said common council shall review, and, when satisfactory, shall approve the same, and thereupon the moneys or property deposited with his proposal for the work herein described shall be returned to the party of the first part, and as soon thereafter as the cost of said work shall have been collected from the said taxpayers the party of the first part shall be entitled to receive the amount due on said final account retained in full settlement of his contract, less the amount hereinbefore specified." By the evidence it appears that a final estimate and a statement of the items relating to the work were prepared by the engineer showing the city of Syracuse indebted to the relator in the sum of $5,241.24 for the work, labor and materials furnished in the statement and performed and delivered under the contract; subjoined to that statement was the following :

"I certify the above amount to be correct, and that the work has been performed and completed according to contract and specifications.
                                    " JOHN B. BORDEN,
                                            " *City Engineer.*

" Syracuse, *Dec.* 23d, 1889."

326 PEOPLE ex rel. READY v. MAYOR, ETC.

Fourth Department, October Term, 1892.

It is to be observed that the return contains no allegation of fraud or fraudulent practice on the part of the contractor or the engineer; nor is there any finding by the court of any fraud in obtaining the certificate of the engineer. During the trial Leonard Durston, who was an assistant engineer during the construction of the sewer, testified as follows: "I saw the work during its progress every time Mr. Borden was there; most every day; I examined it as it proceeded, and knew the construction of it; we gave the contractor the grade of the sewer by driving a peg down into the soil every fifty feet; sometimes the pegs were driven flush with the ground and sometimes a little above; * * * these pegs were driven under the supervision of Mr. Borden, the City Engineer; we sometimes drove the pegs twenty-five feet apart; the figures were marked on the peg and given to the inspector; with written instructions to the inspector; we gave the inspector the figures in a book corresponding with the figures on the pegs; those pegs and grade are made to control the contractor in laying the grade of the sewer; that was done in this case; the sewer was laid as deep as was required by the figures on the pegs; I know it was, because we went there every day; I will say that it was within a quarter or an eighth of an inch; I will not say exactly; I know about the man-holes; they were constructed according to the plans and specifications." He also testified: "The sewer, when it was finished, had a regular, continuous grade, and it was all right." Also: "I went there every time Borden went there; and pegs were set along there, and the depth given to the contractor or inspector, and the figures marked on the top of the pegs; * * * Mr. Borden, the City Engineer, brought the profile with him every time he went up there; I always noticed that he had the plan when he went along there; it was in his office and was for our use; whenever we gave levels we took it with us; the plan was there at the time the stakes were set; every time; he had the plan there and compared that with the stakes when he went there; I know he did every time."

Stephen Putnam, a witness called by the relator, testified that he was an inspector "appointed to inspect this sewer by the City of Syracuse, and acted as such inspector during its entire construction; I directed the contractor in the construction of it, and gave him the grades; I gave Mr. Ready every grade from first to last; I gave

PEOPLE ex rel. READY v. MAYOR, ETC.     327

Fourth Department, October Term, 1892.

him the grade as established by the pegs driven by Mr. Borden, and according to the directions given to me by Mr. Borden; * * * it was built according to grade; * * * he built it just to the grade Borden gave him." At no point was it built above the grade given to him by the witness. He also testified : " All the pegs were set by the engineer, and he made the marks upon the pegs; * * * the grade was given by Mr. Borden upon each one of the pegs; the sewer was built, excavated according to the figures given on the pegs; * * * whenever the contractor built the sewer above the grade, as given to me by the engineer, I made him take it up and rebuild it on the grade; * * * Ready always put the grade of the sewer where I told him to put it; he followed my directions at all times."

Jerry Reilly was called as a witness for the relator, and gave evidence strongly tending to support the statements made by the inspector. The relator testified that the engineer "drove those pegs; he marked the depth I should go; told me to go and build it according to them pegs; * * * as the work progressed he continued to give me pegs; I constructed and built the sewer on the grade given on the pegs in every instance."

By the Court — " He may say he did it according to the measurements given by the engineer."

Other evidence was given tending to show that the sewer was constructed, in respect to its location and grade, by the relator under the supervision of and in accordance with the directions of the city through its inspector and its engineer. And evidence was given tending to show that the city had knowledge of the location and grade of the sewer before it accepted the same and took possession of it and appropriated it to its use, and before it initiated the proceedings to assess the parties liable to pay for its construction. While, on the other hand, there was some evidence given tending to show that the sewer was not in all respects in accordance with the contract and specifications; that there were some defects and imperfections found therein by actual measurements taken in August, 1890.

When Dillon v. The City of Syracuse (29 N. Y. St. Rep., 912) was before us a similar contract was under consideration. In the course of the opinion in that case we had occasion to say : " The parties had a right to agree to be bound by the return of the engineer. Such a provi-

sion is obligatory. (*President, etc., D. and H. Canal Co.* v. *Pa. Coal Co.*, 50 N. Y., 264, and cases cited.) By the fair construction of the contract in question, it must, I think, be held that the return of the engineer was conclusive on the contractors as to the material furnished or work done. * * * It is quite apparent that nothing was to be left open for litigation under the contract, and that the return or final account of the engineer was to include and represent and adjust all the claims of the contractors. This was to be verified and presented to the common council. They were to review, and, if satisfactory, approve; and thereupon the contractors 'shall be entitled to receive the amount due on said final account in full settlement of this contract.' " Since our decision the Court of Appeals have decided *Brady* v. *The Mayor* (44 N. Y. St. Rep., 613; S. C., 30 N. E. Rep., 757), which approves of the principles contained in our decision in the Dillon case. In the Brady case " the contract required the entire work to be completed 'to the satisfaction of the commissioner of public works, and in substantial accordance with the specifications here annexed, and the plan therein referred to.' No fraud was charged, (and it was) held the contractor was entitled to recover the sum certified, with interest; " and it was further held: " Where the grades were given by the surveyor or his assistant; examination made after the excavation was completed and before filling in was done; the filling subsequently made to grade, and the work accepted, if the grade was mistakenly given to the contractor by the surveyor and the work done in conformity therewith, and certificates of completion afterwards given, the defendant cannot thereafter refuse to pay because as the result of a misdirection by its officers, the specifications had not been literally complied with." In the course of the opinion delivered in the Brady case it was said : " The defendant distinctly provided in its contract that its surveyor should be one of the officers to represent its interest in the execution of the contract, and that his certificate that the work had been completed should be essential to the right of the contractor to demand compensation for his work. Not only does it appear that the grades were furnished by the surveyor or his assistant, but it also appears that he subsequently certified to the completion of the work as provided by the contract. That the contractor was at liberty to follow the directions of the officers whom the defendant had stipulated to

PEOPLE ex rel. READY v. MAYOR, ETC.        329

Fourth Department, October Term, 1892.

represent it and speak for it in the execution of the contract is manifest not only from the provisions of the contract already referred to, but also from two others, to which allusion may be briefly made.   *   *   * So, if the grade should be mistakenly given to the contractor by the surveyor and the work should be done in conformity therewith, and certificates of completion afterwards given, the defendant could not thereafter object that the plaintiff should not be compensated because of the result of a misdirection by its officers, the specifications had not been literally complied with." (See, also, *Mulholland* v. *The Mayor*, 113 N. Y., 631.)

When the Brady case was before the General Term of the Superior Court (32 N. Y. St. Rep., 102), it was said, in the opinion delivered, " The various officers of the city who had signed certificates testifying to the sufficient completion of the work by the contractor, Brady, must be regarded as representing the city, and in the absence of any evidence of fraud their deliberate certificate must be regarded as binding on the city. (*Mulholland* v. *The Mayor*, 113 N. Y., 632; *People* v. *Stephens*, 71 id., 550.) The acceptance of the work of itself by the city without objection, and the application of the work when accepted to public use, are strong evidence that the contract has been practically and sufficiently carried out. (*Kingsley* v. *The City of Brooklyn*, 78 N. Y., 200; *Smith* v. *Alker*, 102 id., 87.)" In the course of the opinion delivered by the trial judge, reference is made to the case of *Bond et al.* v. *Mayor of the City of Newark* (19 N. J. Eq., 376); that was a bill in equity to restrain the defendants from collecting an assessment, and after a statement by the Chancellor of the facts in respect to the case, he intimated that there was a legal fraud in the case; however, in that case he did not set the assessment aside, or deny the contractor any remedy; on the contrary, he said: "The only remedy is to make such deduction from the price as justice requires," and he concluded his opinion by declaring that a reference should be had to a master to report "what would have been the additional cost to O'Connor (the contractor), if, at the time this work was done, he had substantially, and fully, complied with every express requisition of his contract." We think that case is not an authority warranting entire disregard of the certificate, and the acts

330        PEOPLE ex rel. READY v. MAYOR, ETC.

FOURTH DEPARTMENT, OCTOBER TERM, 1892.

of the city adopting the improvements. (*Peterson* v. *The Mayor,* 17 N. Y., 453.) It seems that some $1,500 of money has come to the hands of the treasurer by the voluntary payment to him by some of the parties assessed for the improvement. It is not apparent that the treasurer or the city can withhold the money thus paid for the purpose of satisfying the demands of the relator. The common council, in effect, approved of the return of the engineer, and it has never rescinded that action. (*The People ex rel. Fiedler* v. *Mead,* 24 N. Y., 114; *Ross* v. *Curtiss,* 31 id., 606.) In delivering the opinion in *First National Bank* v. *Wheeler* ('72 N. Y., 206), ANDREWS, J., said: "But so far as the fund in the hand of the defendant is concerned, it has been raised through the machinery provided by the act; the commissioners reported to the supervisors; the supervisors levied the tax; the collector collected it and paid it to the defendants, and this has all been done with the purpose, from the outset, of paying the interest on the bonds. The town, at this stage of the proceeding, cannot intervene to arrest the disposition of the fund, and divert it from the purpose intended. The town does not own it; it has no right to its custody, and could not apply it to any town purpose if it had possession of it."

The relator asks to have the defendants continue to discharge their ministerial duties so that the relator may receive the moneys due to him in virtue of his contract with the city under the statute relating thereto.

The foregoing views, if adopted, lead to a new trial.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.