(48 Misc. Rep. 215)

WALTER v. McCLELLAN et al.

(Supreme Court, Special Term, New York County.　September, 1905.)

1. INJUNCTION—MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS.

The performance of a contract for a public improvement cannot be re-strained at the suit of a taxpayer merely because the court believes that the contract was not advisable, nor because of general allegations of bad faith denied by defendants.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 158.]

2. SAME—CROTON RIVER AQUEDUCT—POWER OF COMMISSIONERS.

Under Laws 1883, p. 666, c. 490, § 2, authorizing commissioners to con-struct a new aqueduct from some point on the Croton river or lake to some point in the city of New York, and one or more dams and reser-voirs to retain the water, the commissioners had power to build a reservoir which was not in a direct line between the beginning and end of the aqueduct.

3. SAME—CONTRACTS—BIDS.

Under Laws 1883, p. 666, c. 490, § 2, authorizing commissioners to con-struct a new aqueduct from some point on the Croton river or lake to some point in the city of New York, and one or more dams and reser-voirs to retain the water, and section 518 of the Charter of 1901 (Laws 1901, p. 231, c. 466), continuing the commissioners in office until the com-pletion of "the work," the commissioners had power in completing the work to construct any new work which was necessary, and in doing so to select any bid even though it might be what is termed an "unbalanced" bid.

4. SAME—FORM OF CONTRACT.

Under Laws 1883, pp. 674, 675, 677, c. 490, §§ 25, 26, 27, 28, 33, rela-tive to the construction of an aqueduct from some point on the Croton river or lake to some point in New York, and providing that all work shall be covered by contract except extra work not in excess of a speci-fied amount, the commissioners have no power to make a contract pro-viding that the quantities as to labor and materials therein set forth are employed only as a method of comparison, so that the commissioners may increase or diminish quantities to an extent equalling 25 per cent. of the apparent cost.

5. SAME—INJUNCTION—PARTIES.

In an action to enjoin the execution of a contract for a public improve-ment, the contractors should upon their application be made parties.

Action by Frederick Walter against George B. McClellan and others.　Heard on a motion for injunction pendente lite.　Motion granted.

John C. Wait, for plaintiff.
James T. Malone, for defendant.
Chase Mellen, for contractors.

BISCHOFF, J.　This is a motion for an injunction pendente lite in a taxpayer's action to restrain the performance of a contract for the construction of the Cross river reservoir, it being asserted by the plaintiff that in the awarding of the contract the aqueduct com-missioners have exceeded their statutory powers or have acted in hostility to the public interests, and that the carrying out of the con-tract will involve a waste of public funds, which the court's aid is invoked to prevent.　While much is alleged in an attempt to show that the contract is ill-advised, this presents no question of materiality.

It is well settled that in a taxpayer's action the court may not restrain the acts of public officers, except so far as the acts complained of are without power, or where corruption, fraud, or bad faith, amounting to fraud, is charged. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263. Criticism of the manner in which public officers have exercised their judgment, within the limits of the powers conferred upon them, and without fraud, is not to be addressed to the court, but to the lawmaking power (People v. Mayor, 32 Barb. 102, 113), and, while I do not hold that the award of this contract was in fact ill-advised, no case would be presented for an injunction upon this head, were I to agree with the plaintiff in his conclusion that gross errors of judgment were committed. Nor do I find ground for holding that there is reasonable probability of the plaintiff's success in the action upon the issue of fraud which he tenders. The circumstances disclosed do not support the assertion of fraud, and, taking the case most favorably for the plaintiff, there is nothing before me but general averments of bad faith, which are quite insufficient as proof (Kingsley v. City of Brooklyn, 78 N. Y. 215), while the opposing papers contain explicit denials of any fraudulent intent. The probabilities are so obviously against the plaintiff, upon this issue that, apart from the presumption of official honesty which the moving papers do not suffice to assail, I should have no hesitation in denying the motion, if based solely upon the claim of fraud.

Upon the question of the commissioner's power to enter into the contract before me, several points have been raised. It is contended that the projected work is beyond the general scope of the aqueduct commissioners' authority to undertake, that the contract was awarded to persons other than the lowest bidder, that the successful bidder submitted what is known as an "unbalanced" bid, and that the contract, as awarded, contemplates the incurring of liability to some undetermined extent for additional work, in contravention of the statute. The point last referred to presents matter of gravity, and, as will be noted below, requires me to grant the motion for an injunction. The other points will be briefly discussed, but are not found to disclose any infirmity in the contract, as the plaintiff contends. The contention that the work was not within the authority of the aqueduct commissioners to undertake, proceeds upon the theory that the statute wherefrom their powers were derived (Laws 1883, p. 666, c. 490), has been so limited by section 518 of the Charter (Laws 1901, p. 231, c. 466) that the building of this reservoir is within the office of the commissioner of water supply, gas and electricity, to the exclusion of the aqueduct commissioners.

The aqueduct act (Laws 1883, p. 666, c. 490) empowered the commissioners (section 2) to construct "a new aqueduct or conduit for water, from some point on the Croton river or Croton lake to some point in the city of New York, and for the construction of one or more dams and reservoirs to retain such water." Section 518 of the Charter of 1901, referring to the aqueduct act, provides:

"The term of office of the commissioners, appointed and existing under the aforesaid act, shall cease and determine on the completion of the work, and

thereupon all papers, documents, and records in possession of the aqueduct commissioners shall be delivered to the commissioner of water supply, gas, and electricity."

Elsewhere (Charter, §§ 173, 472, 478, 479, 517) the latter official is given authority, generally, to undertake work of this character.

It is to be noticed that section 518 of the Charter of 1897 (Laws 1897, p. 182, c. 378) provided for the cessation of the aqueduct commissioners' term of office on January 1, 1901, and prohibited these commissioners from beginning any new work. The section was reframed, however, in 1901, so far as to omit these provisions and to continue the commissioners in office until "the completion of the work." Obviously, "the work" was the building of an aqueduct with necessary reservoirs as contemplated by the aqueduct act, since no other guide is afforded. If old work—that is work earlier begun—were alone intended some words of restriction would naturally be looked for in this amendment to section 518 of the Charter which eliminated a present prohibition of the commencement of "new work," but, as amended, the section simply refers to the aqueduct act, and extends the commissioners' term of office to the completion of "the work" generally. That this reservoir is not on a direct line between the beginning and end of the aqueduct cannot affect the question. It is a reservoir to contain water for the purposes of the aqueduct, and the matter of necessity was wholly a question of discretion for the commissioners, controllable by the Legislature, but when exercised within the four corners of the statute, uncontrollable by this court. The objection that the lowest bid was not selected, overlooks the actual extent of the commissioners' authority when awarding such a contract. They had discretion to select any bid (Terrell v. Strong, 14 Misc. Rep. 258, 35 N. Y. Supp. 1000), and the circumstances disclose simply an authorized use of their judgment in the present instance. Nor is there substantial ground for this motion in the fact that an "unbalanced" bid was accepted, the term being used to describe a bid based upon nominal prices for some work and enhanced prices for other work. Such a bid is not per se fraudulent nor unlawful, and where, as here there is shown to have been no material enhancement of the gross price, and the items are fairly identified, the contract is not reasonably assailable. Reilly v. Mayor, 111 N. Y. 478, 18 N. E. 623; Matter of Anderson, 109 N. Y. 554, 17 N. E. 209.

I now come to an infirmity in the contract, however, which, in my view, calls for the granting of the order sought. The statute which defines the powers of the commissioners in the matter of awarding such a contract (Laws 1883, p. 666, c. 490) contains definite and thorough provision for the safeguarding of the public interests in the manner in which an expense for a public improvement of the character contemplated shall be limited and ascertained. It is prescribed (sections 25, 26, 27, 28, and 33) that all work to be performed at the instance and upon the order of the commissioners shall be by contract after submission of bids and after the form of the contract has been approved by the corporation counsel, and that all work shall be covered by contract with the exception of extra work not to exceed the sum of $1,000, or except extra work not to exceed the sum of

$5,000, when certified to in writing by the commissioners as required for the public interests. It is perfectly clear that the expense to be incurred for work undertaken generally at the instance of the commissioners shall be measured definitely by a contract awarded in accordance with the terms of the statute, and that the contract shall definitely disclose what that expense is to be. The contract now before me provides for the payment of certain sums for certain work to be done in the form of excavating, construction, or otherwise, the compensation of the contractor to depend upon the amount of work done at the specified rates, but it is distinctly stated in the agreement that the quantities set forth are not the actual quantities within the scope of the work, but have been employed as a matter of comparison, and the right is reserved to the commissioners to increase or diminish these quantities as they may see fit in the course of the work. To remove all doubt that the contemplated increase in the quantity of the work to be done is substantial, regulation is made by the contract as to the question of time for performance where the increase amounts to more or less than 25 per cent. of the apparent cost of the work upon the basis of the quantity specified, and it appears that 25 per cent. of this estimated cost would be excessive of $300,000. Again, it is provided that the contractor shall do such extra work as shall be ordered in writing by the commissioners' engineer with their authorization. With these provisions in the contract it is impossible to hold that the commissioners have confined themselves to the powers vested in them by the statute. As a guide to and measure of the expense to be incurred—its absolute and necessary office according to the scheme of the act—this contract is practically worthless, and serves only as a measure of the scale of compensation to be received by the contractor in his dealings with the commissioners, to whatever extent the latter may deem it advisable to subject the public to expense. This the statute not only fails to authorize but is distinctly and expressly aimed to prevent.

In the cases of Kingsley v. City of Brooklyn, 78 N. Y. 200, and Matter of Merriam, 84 N. Y. 596, where provisions reserving to the particular public officials the right to increase amount of work to be done under the public contracts there considered were deemed to be not unlawful, it appears that the particular statutes there involved authorized, or at least in no sense operated to negative the validity of the provision, and it was held simply that the presence of such a reservation imported no suggestion of fraud in the contract. Under the statute now considered there appears to be no room for doubt that the reservation of the power to increase the amount of work, especially when coupled with conditions disclosing that the projected increase is very substantial in its relation to the amount originally covered by the contract, is beyond the authority of the commissioners and is unlawful. There is also before me a motion instituted by the successful bidders, parties to the contract, the performance of which is sought to be enjoined, for their joinder as parties to the action. There seems to be no serious opposition to this application and the replying affidavit meets the technical objection raised as to the right of the moving corporation to be heard. These contracts have a direct

and substantial interest in the litigation, which seeks very materially to affect their rights under the contract which they have commenced to perform, and they should be brought in as parties.   Code Civ. Proc. § 452; Osterhoudt v. Board of Supervisors, 98 N. Y. 239.

Motion for injunction granted.  The question of security to be determined upon the settlement of the order to be entered hereon.

Motion to bring in parties granted.

Motion granted.