OSCAR H. WILL, A. C. Hinckley, Arthur Van Horn, and F. H. Register v. CITY of BISMARCK, in Burleigh County, State of North Dakota, a Municipal Corporation; A. W. Lucas, R. C. Battey, C. Bertach, R. L. Best, and C. N. Kirk, Constituting the Board of City Commissioners of the City of Bismarck; and Ford Paving Company, a Foreign Corporation.

(163 N. W. 550.)

Cities — paving — contract for — city commission — paving district — created
by — work necessary — resolution declaring — publication — proceedings
regular — proposals for work.

1. Prior to the letting of a contract for paving, the city commission of the city of Bismarck created a paving district, directed the city engineer to prepare plans, specifications, and estimates, approved the same, placed them on file,

Note.—On sufficiency of specifications for guidance of bidder for public contract, see note in 30 L.R.A.(N.S.) 214, from which it appears that there must be established in advance a basis for an exact comparison of bids, so that all may bid on the same thing.

That the validity of a contract made with a foreign corporation before it has acquired the right to do business in the state is entirely a question of statutory construction, and that there is a decided conflict of authorities on the question, will appear from an examination of note in 1 L.R.A.(N.S.) 1041. See also note in

and passed a resolution declaring the work necessary to be done. Immediately thereafter, the commission published the resolution of necessity in conformity with § 3704, Comp. Laws 1913, in the official newspaper of the city, and concurrently with such publication advertised under § 3705, Comp. Laws 1913, for bids for doing the work. *Held*, that the foregoing proceedings were regular and that § 3705 does not require that the publication of the proposals for work be delayed until the publication of the resolution of necessity has been completed.

**City commission — protests to — duty to consider — special assessment — failure to consider protests — not jurisdictional — statutory period for filing — contract — letting of.**

2. While it is the duty of a city commission to consider protests which may be entered against an improvement to be paid for by special assessment, the failure to consider and pass upon the sufficiency and validity of protests of owners of less than the majority of property in the improvement district at the next regular meeting of the commission after the expiration of the time for filing protests is not a jurisdictional defect, where it appears that no protests were filed within the statutory period and that such protests as were filed prior to the letting of the contract were investigated and reported upon adversely by the paving committee of the city commission, consisting of the entire commission.

**"Citizens' paving committee" — city commission — co-operation of — in selecting paving material — cannot be viewed with suspicion — property owners — petitions — office malfeasance in — acts do not constitute.**

3. Where a "citizens' paving committee" co-operates with the city commission in the selection of paving material, such co-operation is not to be viewed with suspicion; and where property owners within a paving district, following the suggestion of a citizens' paving committee that such owners refrain from signing petitions expressing preference for material pending an investigation by the said committee, by their nonaction leave the city commission with full authority to select paving material, *held* that acquiescence in and assent to such co-operation do not amount to malfeasance on the part of the members of the city commission.

24 L.R.A. 315, on validity of contracts made by foreign corporations which have not complied with statutory conditions of the right to do business in the state.

On effect of agreement by foreign corporation to install article within the state to bring it within statute regulating foreign corporations, see note in 14 L.R.A. (N.S.) 674.

On statutory provision for penalty as affecting validity or enforceability of contract made by foreign corporation without complying with conditions of doing business, see notes in 4 L.R.A. (N.S.) 688, and 40 L.R.A. (N.S.) 857.

On right to cancelation of contract made with foreign corporation because it has not complied with the laws entitling it to do business within the state, see note in 21 L.R.A. (N.S.) 707.

**Public improvement — contract for — city engineer — powers — delegating to — city commission — presumed to act in conformity with wishes of.**

4. Where a proposed contract for a public improvement contains clauses delegating to the city engineer powers which can properly be exercised only by the city commission, it is proper to assume that the city engineer will act in conformity with the wishes of the city commission as to such matters.

**Contract for public improvement — clauses in — city engineer — supervisory powers given to — plans and specifications — compliance with — presumption.**

5. The clauses of a proposed contract for public improvement which give to the city engineer the supervisory power necessary to insure satisfactory completion of the work in conformity with the plans and specifications are *held* not to violate § 3708 of the Compiled Laws of 1913, requiring the letting of such contract to the lowest responsible bidder.

**Public work — contract for — stipulations in — amount of work — specific maximum reduction of — items of material — bidders — unit prices — schedule of — permissive alteration in quantity of work — not indefinite — bidding — competition in.**

6. Where a proposed contract for public work contains stipulations under which the quantity of work is subject to a maximum reduction of 15 per cent, and where the proposal for bids specifies approximate quantities, and bidders bid upon a number of items of material and work, and the contract for the same embodies a schedule of unit prices,—*held* that the permissive alteration in quantity within a given maximum does not render the quantity of work indefinite, and does not eliminate competition in bidding.

**Contract for public work — letting to corporation not doing business in state — transacting business in state — is not — license to transact business — obtained after contract made — valid contract.**

7. Where a contract was let to a corporation which was not at the time doing business within the state, *held* that entering into such contract was not a doing of business within the state within § 136 of the Constitution and §§ 5238 and 5240, Comp. Laws 1913; and that such contract is not invalidated by § 5242 of the Compiled Laws of 1913; *held*, further, that work will not be prohibited under such contract where it appears that the corporation complied with the statutory requirements and obtained from the secretary of state a license soon after the contract was let.

Opinion filed May 10, 1917.

Appeal from the District Court of Burleigh County, *Honorable W. L. Nuessle,* Judge.

Judgment for defendants. Plaintiffs appeal.

Affirmed.

*F. H. Register* and *S. E. Ellsworth,* for appellants.

The power to make public improvements and to impose the cost of the same upon a particular portion of the people of the state declared to be benefited thereby is a sovereign function originally inherent under constitutional authority in the state. These powers may be by the state delegated to municipal corporations. The extent of such powers is a matter of judicial construction. Dill. Mun. Corp. 5th ed. § 239.

The power to lay out, open, grade, and improve streets and highways is the proper subject of legislative grant. Comp. Laws 1913, §§ 3599, subd. 7, 3702, 3706.

But such powers must be exercised according to the terms of the grant, and in accord with the law. 28 Cyc. 971; Hawthorne v. East Portland, 13 Or. 271, 10 Pac. 342; Laws 1905, chap. 150, p. 281; Seattle Cedar Lumber Mfg. v. Ballard, 50 Wash. 123, 96 Pac. 956; Comp. Laws 1913, § 3704.

In letting a contract for the work of a public improvement, the city commission must make legal publication of the notice calling for bids. Such was not done in this case. Comp. Laws 1913, § 3705; Finlayson v. Peterson, 5 N. D. 587, 33 L.R.A. 532, 57 Am. St. Rep. 584, 67 N. W. 953; Dill. Mun. Corp. 5th ed. § 809.

The commission failed to consider the protests of resident taxpayers and property owners, duly filed with them, and by such failure actually deprived the property owners of their statutory right to be heard. Comp. Laws 1913, §§ 3704, 3708; Dill. Mun. Corp. 5th ed. § 801.

The contracting parties were without authority to grant or give to the city engineer certain powers the exercise of which, by statute, remained in the commission. The contract gives to the engineer the power to make the cost of the improvements greater or less, according to his desire to favor or injure the contractor, vest him with an illegal discretion, tends to prepare the way for an unfair assessment, and opens wide the door to fraud and favoritism. Stansbury v. White, 121 Cal. 433, 53 Pac. 941; Comp. Laws 1913, § 3709; Bolton v. Gilleran, 105 Cal. 244, 45 Am. St. Rep. 33, 38 Pac. 881; California Improv. Co. v. Reynolds, 123 Cal. 88, 55 Pac. 802; Perine Contracting & Paving Co. v. Pasadena, 116 Cal. 6, 47 Pac. 777; Warren v. Chandos, 115 Cal. 382, 47 Pac. 132; Richardson v. Heydenfeldt, 46 Cal. 68; Anderson v.

Fuller, 51 Fla. 380, 6 L.R.A.(N.S.) 1026, 120 Am. St. Rep. 170, 41 So. 685.

"Where competition in bids for the making of a public improvement is required by law, the specifications must be so framed as to secure fair competition upon equal terms to all bidders." Diamond v. Mankato, 89 Minn. 48, 61 L.R.A. 448, 93 N. W. 911; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 106 Am. St. Rep. 931, 99 N. W. 603; Comp. Laws 1913, § 3709; Dill. Mun. Corp. 5th ed. § 807; Nash v. St. Paul, 11 Minn. 174, Gil. 110; Schiffmann v. St. Paul, 88 Minn. 43, 92 N. W. 503; Wickwire v. Elkhart, 144 Ind. 305, 43 N. E. 216; Dickinson. v. Poughkeepsie, 75 N. Y. 65; 20 Am. & Eng. Enc. Law, 1165, 1169; LeTourneau v. Hugo, 90 Minn. 420, 97 N. W. 115.

"Where the municipal authorities are required to advertise for bids and let a contract to the lowest bidder, they are not at liberty to let a contract different from that advertised." 20 Am. & Eng. Enc. Law, 2d ed. § 1169; Piedmont Paving Co. v. Allman, 136 Cal. 88, 68 Pac. 493; Wickwire v. Elkhart, 144 Ind. 305, 43 N. E. 216; Nash v. St. Paul, 11 Minn. 174, Gil. 110.

All work done must come within the original plans and specifications —upon which alone the contract must be based. Cicero v. Green, 211 Ill. 241, 71 N. E. 884; 28 Cyc. 1036.

The powers granted to certain municipal officers or bodies cannot be delegated or passed on to some other person or officer, unless this right of delegation is expressly given. 1 Dill. Mun. Corp. 5th ed. § 244; Ruggles v. Collier, 43 Mo. 353; St. Louis use of Murphy v. Clemens, 43 Mo. 395; St. Louis use of Creamer v. Clemens, 52 Mo. 133; Matthews v. Alexandria, 68 Mo. 115, 30 Am. Rep. 776; State, Danforth, Prosecutor v. Paterson, 34 N. J. L. 163; State, Durant, Prosecutor, v. Jersey City, 25 N. J. L. 309; Jackson County v. Brush, 77 Ill. 59; East St. Louis v. Wehrung, 50 Ill. 29; State ex rel. Henderson v. Bell, 34 Ohio St. 194; Minneapolis Gaslight Co. v. Minneapolis, 36 Minn. 159, 30 N. W. 450; Phelps v. New York, 112 N. Y. 216, 2 L.R.A. 626, 19 N. E. 408; Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105; Re Emigrant Industrial Sav. Bank, 75 N. Y. 388; Hyde Park v. Carton, 132 Ill. 100, 23 N. E. 590; McCrowell v. Bristol, 89 Va. 652, 20 L.R.A. 653, 16 S. E. 867; Thompson v. Schermerhorn, 6 N. Y. 92, 55 Am. Dec. 385; Page & J. Taxn. by Assessment, § 542.

Under the Constitution and statutes, the Ford Paving Company was not qualified to transact business in this state at the time of the making of the contract, no authority having been obtained from the secretary of state as by law provided, and its attempt to comply with the law subsequent to the bringing of this action is futile. N. D. Const. § 136; Comp. Laws 1913, §§ 5238, 5242; Chesley v. Soo Lignite Coal Co. 19 N. D. 18, 121 N. W. 73.

*F. E. McCurdy,* City Attorney (*Newton, Dullam, & Young,* of counsel), and *H. E. Spangler,* Attorney for Ford Paving Company, for respondents.

Provision is made for meeting any deficiency arising from errors or mistakes in making an assessment. Comp. Laws 1913, § 3712.

Variances or mere irregularities will not invalidate the proceedings, at least unless prejudice can be shown. Warner v. Knox, 50 Wis. 429, 7 N. W. 372; Houghton v. Burnham, 22 Wis. 306; Kansas Town Co. v. Argentine, 5 Kan. App. 50, 47 Pac. 542; Koontz v. Centerville, 161 Iowa, 627, 143 N. W. 490; Field v. Barber Asphalt Paving Co. 194 U. S. 618, 48 L. ed. 1142, 24 Sup. Ct. Rep. 784.

Nor will injunction lie on such grounds. Balfe v. Lammers, 109 Ind. 347, 10 N. E. 92; Baldwin v. Bangor, 36 Me. 518.

Some substantial injury or prejudice must be shown. Rockwell v. Bowers, 88 Iowa, 88, 55 N. W. 1; Ballard v. Appleton, 26 Wis. 67; Paulsen v. El Reno, 22 Okla. 734, 98 Pac. 958.

The irregularities of which complaint is here made are not jurisdictional, and there is no showing in this case of any injustice to any property owner. Barber Asphalt Paving Co. v. Edgerton, 125 Ind. 455, 25 N. E. 436; McQuillin, Mun. Corp. § 1909; People ex rel. Butts v. Rochester, 5 Lans. 142; Ottumwa Brick & Constr. Co. v. Ainley, 109 Iowa, 386, 80 N. W. 510; Louisville v. American Standard Asphalt Co. 125 Ky. 497, 102 S. W. 806.

The notice of proposals for bids was adequate and was legally given. Its publication concurrently with that of the resolution declaring the necessity of the work is wholly immaterial. Comp. Laws 1913, § 3704; Springfield use of Central Nat. Bank v. Weaver, 137 Mo. 650, 37 S. W. 509, 39 S. W. 276; Smith v. Crittenden, 16 Mich. 152; Lewis's Sutherland, Stat. Constr. § 611.

All equities favor the proceedings.   Denver v. Campbell, 33 Colo. 162, 80 Pac. 142.

The protests were not filed in writing with the city auditor in time or as by law provided, by the owners of property who did not want the improvement.   They are deemed to have waived the right to protest and to have assented to the making of the improvement.   Burnett v. Sacramento, 12 Cal. 76, 73 Am. Dec. 518; Hildreth v. Longmont, 47 Colo. 79, 105 Pac. 107; McKee v. Pendleton, 162 Ind. 667, 69 N. E. 997; Loomis v. Little Falls, 66 App. Div. 299, 72 N. Y. Supp. 774; Price v. McPherson, 92 Kan. 82, 139 Pac. 1162.

The number of protests was not sufficient to oust the city commissioners of jurisdiction.   Knopfi v. Gilsonite Roofing & Paving Co. 92 Mo. App. 279; Hariney v. Heller, 47 Cal. 15; Sedalia ex rel. Gilsonite Constr. Co. v. Montgomery, 109 Mo. App. 197, 88 S. W. 1014; Comp. Laws 1913, § 3704.

The city commissioners are not chargeable with misleading the property owners.   The delegation of power to the city engineer did not prevent a correct estimate of the cost of the work to be performed, nor the proper submission of bids therefor.   The statutory provisions grant the same powers to the city engineer.   Comp. Laws 1913, §§ 3702, 3709; Allen v. Rogers, 20 Mo. App. 290; Walter v. McClellan, 113 App. Div. 295, 99 N. Y. Supp. 83; Salt Lake City v. Smith, 43 C. C. A. 642, 104 Fed. 457; 2 Dill. Mun. Corp. 5th ed. p. 1228; Cincinnati v. Anchor White Lead Co. 44 Ohio St. 243, 7 N. E. 11.

Recovery for extras at a unit rate has been allowed.   Talbott v. New Castle, 169 Ind. 172, 81 N. E. 724; Hastings v. Columbus, 42 Ohio St. 594; Cady v. San Bernardino & L. C. Power Co. 153 Cal. 24, 94 Pac. 242; Dickey v. Porter, 203 Mo. 1, 101 S. W. 586; Longworth v. Cincinnati, 34 Ohio St. 101.

If the work is fairly included in the general terms of the contract, recovery may be had therefor.   McDonald v. Mezes, 107 Cal. 492, 40 Pac. 808; Smith v. Portland, 25 Or. 297, 35 Pac. 665; Cicero v. Green, 211 Ill. 241, 71 N. E. 886; Piedmont Paving Co. v. Allman, 136 Cal. 88, 68 Pac. 493.

When the language of a contract is equally susceptible of two or more constructions, courts will adopt that one which will sustain the contract, rather than one which would destroy it.   Sarles v. Sharlow, 5 Dak.

107, 37 N. W. 748; Lake v. Decatur, 91 Ill. 596; City Street Improv. Co. v. Marysville, 155 Cal. 419, 23 L.R.A.(N.S.) 327, 101 Pac. 308.

The contract with the Ford Paving Company is valid. The court cannot assume that the city engineer and city commissioners will violate the law and do work not authorized under the contract. Kansas Town Co. v. Argentine, 5 Kan. App. 50, 47 Pac. 542; Frick v. Morford, 87 Cal. 576, 25 Pac. 764; Webber v. Lockport, 43 How. Pr. 368; Mason v. Sioux Falls, 2 S. D. 640, 39 Am. St. Rep. 802, 51 N. W. 770; Cole v. Skrainka, 105 Mo. 303, 16 S. W. 491; Voght v. Buffalo, 133 N. Y. 463, 31 N. E. 340; Hyman v. Chicago, 188 Ill. 462, 59 N. E. 10; Re Pinckney, 22 Hun, 474; Hutchinson v. Pittsburg, 72 Pa. 320; Heman Constr. Co. v. Loevy, 179 Mo. 455, 78 S. W. 613; Barkley v. Oregon City, 24 Or. 515, 33 Pac. 978; Field v. Chicago, 198 Ill. 224, 64 N. E. 840; Ottumwa Brick & Constr. Co. v. Ainly, 109 Iowa, 386, 80 N. W. 510; Pennsylvania v. Hays, 93 Pa. 72; Comp. Laws 1913, § 3708.

There was no valid contract until the required bond of the company was approved by the city; and, before this was done, the Ford Paving Company was authorized to transact business in this state. Comp. Laws 1913, §§ 5238–5242; Mann v. Rochester, 29 Ind. App. 12, 63 N. E. 874; Edge Moor Bridge Works v. Bristol County, 170 Mass. 528, 49 N. E. 918; Central Bitulithic Paving Co. v. Highland Park, 164 Mich. 223, 129 N. W. 46, Ann. Cas. 1912B, 719; Smith v. Independent School Dist. 108 Minn. 322, 122 N. W. 173; Crossley v. Maycock, L. R. 18 Eq. 180, 43 L. J. Ch. N. S. 379, 22 Week. Rep. 387; Harvey v. Barnard's Inn, 50 L. J. Ch. N. S. 750, 45 L. T. N. S. 280, 29 Week. Rep. 922; Cowley v. Watts, 17 Jur. 172, 22 L. J. Ch. N. S. 591, 1 Week. Rep. 218, 484; Jersey City Water Com. v. Brown, 32 N. J. L. 504; State, Stanley, Prosecutor v. Passaic County, 60 N. J. L. 392, 38 Atl. 181; McCormick v. Oklahoma City, 122 C. C. A. 220, 203 Fed. 921; Dill. Mun. Corp. 5th ed. p. 810.

Such company was not doing business in this state when it signed the contract. Hogan v. St. Louis, 176 Mo. 149, 75 S. W. 604; State use of Hart-Parr Co. v. Robb-Lawrence Co. 15 N. D. 55, 106 N. W. 407; A. Booth & Co. v. Weigand, 30 Utah, 135, 10 L.R.A.(N.S.) 693, 83 Pac. 734; Commercial Bank v. Sherman, 28 Or. 573, 52 Am. St.

Rep. 811, 43 Pac. 658; Natural Carbon Paint Co. v. Fred Bredel Co. 114 C. C. A. 111, 193 Fed. 898.

The city can enforce the contract, and a property owner cannot object to same. Beaser v. Barber Asphalt Paving Co. 120 Wis. 599, 98 N. W. 525; Lanz-Owen & Co. v. Garage Equipment Mfg. Co. 151 Wis. 555, 139 N. W. 395; Byrne v. Chicago General R. Co. 169 Ill. 75, 48 N. E. 703; 36 Cyc. 1171; Des Moines County v. Harker, 34 Iowa, 84; People v. Herkimer, 4 Cow. 345, 15 Am. Dec. 379; Com. v. Baldwin, 1 Watts, 54, 26 Am. Dec. 33; Dollar Sav. Bank v. United States, 19 Wall. 239, 22 L. ed. 82; Baltimore v. Root, 8 Md. 95, 63 Am. Dec. 693.

Plaintiffs are not entitled to equitable relief. If they shall ever acquire any right to attack the improvement, it must arise through a violation of the contract or from erroneous assessment. Flickinger v. Fay, 119 Cal. 590, 51 Pac. 855; Merritt v. Duluth, 103 Minn. 236, 114 N. W. 758; Ballard v. Appleton, 26 Wis. 67; Kansas City v. Smiley, 62 Kan. 718, 64 Pac. 613.

The owners have the right to appeal from the determination of the assessment commission. The legal remedy is adequate. Cummings v. Kearney, 141 Cal. 156, 74 Pac. 759; Nixon v. Burlington, 141 Iowa, 316, 115 N. W. 239, 18 Ann. Cas. 1037.

BIRDZELL, J. This is an appeal from the judgment of the district court of the sixth judicial district, dismissing a complaint and denying to the plaintiffs the relief sought in an action brought to enjoin the performance and effect of a cancelation of a paving contract entered into between the city of Bismarck and the Ford Paving Company, for the paving of certain streets in paving district No. 2 in the city of Bismarck. The case is here for trial de novo and was argued on April 17th. The appellants demand a review of the entire case. Most of the facts are contained in documentary evidence adduced at the trial, and there is very little dispute as to the material facts involved, although there is sharp conflict in the contention of appellants and respondents as to the legitimate inferences to be drawn from some of the facts established and as to the conclusions of law based thereon. The facts may be briefly stated as follows: During the summer of the year 1916,

the city of Bismarck undertook a paving project of comparatively large extent. At a meeting of the city commission held on June 26, 1916, two paving districts were created within the city limits by the passage of resolutions. The work covered by the contract in question was to be done in paving district No. 2, which included a large part of the residential section of the city.

On August 3d of that year, the city commission adopted a resolution of necessity in conformity with § 2704 of the Compiled Laws of 1913. At the same meeting of the commission the city auditor was directed to cause proposals for the paving to be advertised in the official newspaper, which advertisement was published as directed, appearing for the first time on August 5, 1916. The resolution of necessity was published concurrently with the proposal for bids. It appears from the record that, while this project was being discussed, a petition favorable to the proposition was signed by a number of the citizens and property owners. Thereafter and prior to the 5th of August, 1916, communications were addressed to the members of the city commission, requesting the withdrawal from the petition of the names of the signers of the communications. The language adopted by those desiring to withdraw their names is as follows:

"We, the undersigned, having signed a petition for paving in the city of Bismarck, North Dakota, which petition is on file with you, do hereby request that our names be taken from such petition filed with you recently."

To the above communication there were 129 signatures attached. Between the 20th of August and the 11th of September, the latter date being the date of the letting of the contract, there were approximately 153 protests filed with the city auditor, which protests were in the following form:

"I am the present owner of the property herein described, and desire to protest against paving in front of the same.

"Any former request in favor of paving affecting this property is hereby withdrawn." (A description of the property followed.) The extent to which these withdrawals and protests were considered by the city commission will appear later in the discussion of the legal propositions relied upon by the appellants. On August 29th and on other dates prior to September 11th, there was published in the Bismarck

Tribune, the official newspaper of the city of Bismarck, a "Notice to Property Owners," as follows:

"This committee believes it to the best interest of property owners that the selection of paving material be deferred until this committee in conjunction with the city commission paving committee, can investigate the merits of the various kinds of paving materials. Therefore we suggest that, should property owners be asked to sign petitions for paving material, that they do not do so without conferring with some of the members of this committee." This notice was signed by a committee styling itself the "Citizens' Paving Committee." The individual names of seven prominent citizens of the city were attached to the foregoing notice. It appears from the record that the "Citizens' Paving Committee" and the paving committee of the city commission co-operated in making an investigation of the various kinds of paving materials and their adaptability to the contemplated improvement of the district in question. To this end a committee visited various cities, and at least part of the expense, if not the entire cost of the joint investigation, was paid by the city of Bismarck. No petitions of property owners specifying the kind of material desired, such as would have had the effect, under § 2704 of the Compiled Laws of 1913, of precluding a choice by the members of the city commission, were filed. At the meeting of the commission on September 11th, a committee of property owners appeared before the city commission and asked an extension of time for a period of five days, in which to permit further discussion by property owners of the kind of paving materials before the letting of the contract. The contract, however, was let on September 11th, in pursuance of the notice to bidders, except that the amount of work specified in the proposals for bids was decreased to the extent of four blocks around the courthouse and 75 feet west of Second street.

In that portion of the specifications which is headed "Notice to Bidders," there is included a proposed contract which contains certain provisions relative to the power of the city engineer to increase or decrease the quantity of work and to supervise the same. These features of the proposed contract, which were drawn into question by the appellants, will be specifically noted later on in considering the validity of the objections raised, and we shall also note and consider in that con-

nection some changes from the proposed contract which were made in the contract as actually entered into. At the time of the execution of the contract, the Ford Paving Company had not filed with the secretary of state the papers provided for by §§ 5238–5240 of the Compiled Laws of 1913, as a prerequisite to obtaining a license to do business in the state of North Dakota, nor had any such license been issued. The license, however, was issued later, to wit, on October 18, 1916.

On behalf of the appellants it is contended that the contract entered into in the circumstances above outlined, between the city of Bismarck and the Ford Paving Company, is invalid; First, on account of irregularities, deficiencies, and malfeasance in the acts of the city commission leading up to the letting and execution of the contract; second, that the contract itself is irregular, and for this reason defective and void. In specifying the particulars in which the proceedings of the commission were irregular, the appellants contend that the notice of proposals for bids was defective in that it was published concurrently with the resolution of necessity, and was not published for the requisite time after the expiration of the fifteen days within which protests against the paving project might be filed by property owners. Section 3702 of the Compiled Laws of 1913 gives to cities the power to create paving districts. Section 3703 authorizes the council or commission, as the case may be, to employ an engineer to prepare plans and specifications for such work and to make an estimate of its probable cost, and requires that these plans and specifications shall be approved by resolution. Section 3704 provides that after the plans, specifications, and estimates shall have been filed in the office of the city auditor and approved, the city council shall, by resolution, declare such work or improvement necessary to be done; that such resolution shall refer intelligently to the plans, specifications and estimates, and that it shall be published twice, once in each week for two consecutive weeks, in the official newspaper of the city. It further provides that, if the owners of a majority of the property liable to be specially assessed, "shall not, within fifteen days after the first publication of such resolution, file with the city auditor a written protest against such improvement, then the majority of such owners shall be deemed to have consented thereto;" and that "at the next regular meeting of the city council after the expiration of the

time for filing protests . . ., the council shall hear and determine the sufficiency and validity of such protests, and if two thirds of the council shall decide that such protests are insufficient or not well taken, then the city council shall have power to cause such improvement to be made and to contract therefor, and to levy and collect assessments therefor as hereinafter provided, and all such work shall be let by contract to the responsible bidder whose bid is the lowest therefor." The remainder of the section deals with matters of procedure not germane to our present inquiry, but in passing it should be noted that this portion of the section touches upon a variety of subjects. It specifies what the procedure shall be when bids shall have been opened, it governs the matter of notice of time and place of future meetings, and gives the owners of the majority of the property the right to petition for the kind of pavement preferred by them. The first clause of § 3705 is the clause from which appellants draw their principal argument in this connection. It reads as follows:

"The city council shall *then* (the italics are ours) cause proposals for said work to be advertised for in the official paper of such city twice, etc." The appellants argue that it is the evident purpose of the two sections of the statute, when read together, that bids for the work of construction shall be advertised for only after the time for filing protests has expired. We do not so read the statute. It is the purpose of the sections summarized above to provide a simple, yet comprehensive, procedure to be followed in making public improvements of the character here involved. The various steps leading up to the letting of the contract follow in orderly succession from the first creation of the district. Plans, specifications and estimates for the guidance of the city commission and the property owners are first required to be placed on file. Next, after full opportunity to inspect the plans and specifications and consider the estimates, the members of the city commission are empowered to pass a resolution of necessity. This resolution presumably represents their official judgment, acting as representatives of the electors of the city, and it is required to be published for the information of the public and particularly the property owners affected by the contemplated improvement. The statute allows fifteen days after the first publication of this resolution for the filing of protests, and if, within that time, the owners of a majority of the

property later to be specially assessed do not file a written protest, the majority of such owners are deemed to have consented thereto. In other words, if within fifteen days after the first publication of the resolution, protests to the number referred to are not filed, the necessity for the improvement and the propriety of making the same is deemed to have not only the official sanction of the city commission, but the consent of the property owners as well. It is true that it is made the duty of the city commission to consider the protests at the next meeting of the city council after the expiration of the period for filing the same, but we find nothing in this requirement of the statute which makes it imperative that consideration shall be given to these protests before advertising for bids. If, upon a consideration of the protests, they should be determined to be sufficient and valid, the only consequence of such determination would be that the proposal would be dropped, and the only loss on the part of the city, in addition to the ordinary preliminary costs, would be the cost of the publication of the advertisement for bids. The purpose of the advertisement is to secure competition in bidding for the work, and certainly this purpose is well served whether the advertisement is run concurrently with the resolution of necessity, or whether it is later published by itself. Indeed, we can readily see where it might be a matter of some advantage to those interested in a contemplated public improvement to have the advertisement for bids run concurrently with the publication of the resolution of necessity. Protests might well be founded upon an anticipated excessive cost, an element which must necessarily remain uncertain until the bids are opened. Upon opening the bids, both the objectors and the city commission would be able to pass upon an objection of this sort more intelligently than would be the case if the bids could not be received or even advertised for until the protests had been determined. Furthermore it appears to us from a reading of the foregoing sections of the statute itself that the more reasonable interpretation of the statutory order of sequence is the creation of the district, the ordering of the plans, etc., the passage of the resolution, and *"then"* the causing of proposals to be advertised for; and that the word *"then"* as used in § 3705 has no reference to the publication of any of the preliminary proceedings, nor to the determination of the sufficiency of protests if any are filed.

Appellant argues that the failure of the city commission, if they did

so fail, to consider even a single protest legally filed, would oust them of jurisdiction to proceed further with the improvement. In this we cannot agree. If the consideration of a single protest is jurisdictional to the extent indicated, it follows that the improvement could not be made where there was a single objector unless two thirds of the council should consider the protest insufficient. In other words, whereas a majority of the council is authorized to proceed with a work of public improvement, the weight of a single objector added to the minority would make it necessary for two thirds of the council to concur in ordering the work to proceed. The more reasonable interpretation of the statute is that where the owners of a majority of the property protest it will require a vote of two thirds of the council to determine the insufficiency of the protests and to proceed with the work. It is nevertheless the duty of the city commission to consider and weigh every protest that is filed up to the time of letting the contract. Had the statute been strictly and literally complied with in the case at bar, it would have resulted in no action whatever on protests, for there were none placed on file within the fifteen days allowed by law. It is true that, prior to the passage of the resolution of necessity, a number of those who had formerly petitioned for paving had notified the city commission that they desired to withdraw their names, but such withdrawals can in no sense be considered as protests. They created no issue respecting the paving, nor did they raise any question the "sufficiency" or "validity" of which could be determined by the commission.

It appears in the case at bar, however, that there not only were no protests filed within the statutory period, but that such protests as were filed prior to the letting of the contract, counting as protesting those who merely withdrew their names from the voluntary petitions, did not aggregate 50 per cent nor even 40 per cent of the property, nor did the city commission altogether ignore them. These protests were considered by the paving committee of the city commission, *consisting of the entire commission,* and their conclusions based thereon, after an investigation made by them, were reported to the commission in writing at the meeting of September 11th, and this report was placed on file. This amounted to an adoption of the report and constituted action by the commission. Knopfi v. Gilsonite Roofing & Paving Co. 92 Mo. App. 279.

It is next contended that the record discloses concerted action on the part of the "Citizens' Paving Committee" and the paving committee of the city commission to mislead the property owners in the paving district to such an extent as to render improbable the exercise of their right to select the paving material. It is urged that sufficient was done in the consummation of this wrongful purpose to amount to malfeasance on the part of the members of the city commission, and that, as a result of the alleged malfeasance, they became wrongfully possessed of the power to exercise a free hand in the selection of the paving material. In support of this contention appellants point out that the city was required to pay for the publication of the notice published at the instance of the Citizens' Paving Committee, that the city reimbursed the members of the joint investigating committee for the expenses incurred on their tour of inspection, and that no opportunity was accorded for a public expression as to kind of paving material desired after the return of the committee and before the letting of the contract. The fact that the publication of the notice to property owners was paid for by the city is not a strong circumstance tending to indicate a previous arrangement. The bill for publication rendered by the official newspaper contains thirteen items, of which this is one. In as much as the bill embraces charges for a number of items in connection with the paving project, it is not at all likely that the question of the propriety of the payment of this item by the city would arise. Nor is the circumstance that the expenses of the investigation trip were paid by the city a sufficient indication, in our judgment, that the city commissioners were conspiring with the "Citizens' Paving Committee" to obtain the power to select the paving material. The evidence that the city paid the expenses of all of the members of the joint investigating committee, and particularly the nonofficial members, is far from satisfactory. The only testimony relating to the subject is the testimony of the city engineer, whose expenses, it must be conceded, were properly chargeable to the city; and whether or not he intended to testify that the city paid the expenses of the other members of the committee depends upon whether, in answering a question, he understood the pronoun "you" to have been used in the singular or plural sense. After having been asked concerning his own expenses, and having answered to the effect that he and

the other members of the committee advanced their own expenses, he was asked:

"Q. Did you afterward render an account of them to the city auditor?" To which he answered, "Yes, sir." And,

"Q. You were reimbursed by the city for the expenses of that trip?" To which he answered, "Yes, sir."

The bids were opened at the meeting of the city commissioners held on August 28th, and immediately thereafter notice that the contract would be awarded on September 11th was published seven times in the official newspaper of the city. The joint investigating committee returned from their inspection tour a week before the date for the letting of the contract. From these circumstances it is apparent that any property owners desiring to express a preference for any particular kind of paving material had full opportunity to do so. The notice of the Citizens' Paving Committee itself did not request the property owners to refrain from expressing themselves, but only apprized the public that a joint investigation would be made, and suggested that property owners refrain from signing petitions without first conferring with some of the members of the Citizen's Paving Committee. In view of the fact that the statute precludes the selection of paving material by the city commission when a petition signed by the requisite number of property owners, expressing prference for a given material, is filed, the course pursued in this instance commends itself to our judgment as being but a reasonable method of making an intelligent selection. The record, in our judgment falls far short of conveying evidence of collusion, and it amply sustains the negative findings of the trial court on this question.

It is next contended that the contract is invalid by reason of the fact that the proposed contract which is part of the plans and specifications adopted by the city commission and described in the proposal for bids contain clauses delegating to the city engineer powers which could properly be exercised only by the city commission, and that the same were misleading, deceptive, and deficient to such a degree as to violate the requirements of the statute that work should be let to the lowest responsible competitive bidder. Comp. Laws 1913, § 2708. This contention is based upon the clauses in the proposed contract purporting to delegate to the engineer the power (1) to make alterations in the work

which may increase or diminish its quantity to the extent of 15 per cent; (2) to direct how the work shall be done; (3) to require the contract to dismiss incompetent workmen; (4) to require the contractor to remove such portions of the work as may be deemed necessary for the discovery of improper workmanship or material, and to replace the same; (5) to prevent subletting; (6) to reject materials; (7) to notify the contractor that if within five days he shall not take such steps as in the judgment of the engineer will insure satisfactory completion of the work, the city commission may declare the contract null and void; and (8) to require that the work shall be completed to the entire satisfaction of the engineer, and that his judgment shall be final in the interpretation of the specifications. In answer to the contention that the proposed contract was one involving a delegation of powers that could be exercised only by the city commission, it need only be said that, as regards the effect upon the bidding, it is fair to assume that such powers as were ostensibly delegated to the city engineer were to be exercised by him only as an agent of the city. The engineer is appointed by the city commission, and is responsible to the commission for the faithful discharge of the duties of his office. From this it would naturally be assumed that, in all matters involving the performance of the contract, he would use his own judgment and expert knowledge in the interest of the city which employs him and for the proper guidance of the members of the city commission who, notwithstanding the expressions in the proposed contract, would be expected to pass final judgment upon the matters ostensibly delegated to the city engineer. So far as the contractor is concerned, these stipulations mean only that he shall be required to do the work under the direction and to the reasonable satisfaction of the other contracting party, the city of Bismarck, and it is only for purposes of convenience and efficiency that the officer of the city, in whose expert knowledge and judgment the city reposes confidence, is named as the person who will act for it. If, in this connection, powers are ostensibly delegated to the city engineer which in reality can only be exercised by the city commission, as, for instance, the power to determine that a certain block shall not be paved, we cannot see wherein the attempted delegation operates to the detriment of either the contractor or the city. The reasonable interpretation of such a provision in the proposed contract would be that the city reserves the right to alter the quantity

of the work to be done within a certain maximum, and that its directions will be carried out by the engineer. It appears that the parties actually placed this interpretation upon the proposed contract in the instant case, for at the meeting of the city commission at which the contract was let, a resolution was passed instructing the engineer not to increase or diminish the work except under the direction of the board of city commissioners, and a provision was inserted in the contract to the effect that alterations in the work might be directed by the city engineer with the consent of the board of city commissioners first had.

Neither can we see wherein the stipulations contained in the proposed contract would operate to prevent competitive bidding. It is true that a contractor who might anticipate favors from the engineer would be more apt to put in a low or reasonable bid than would one who had no reason to anticipate favorable action on the part of the engineer. But, in our judgment, this is a matter that cannot be considered in determining the validity of the proposal. In final analysis this argument merely amounts to the suggestion that anticipated favoritism is likely to be substituted for real competition. We do not see wherein the criticized portions of the proposed contract contribute to the probability of this result. It is the manifest object of these provisions to give the trusted expert of the city, in dealing with the contractor, ample authority to safeguard the public interests, and in our judgment such provisions in public contracts are both expedient and wise. If it is impossible to insert and give effect to provisions such as those in question, without destroying the opportunity for competitive bidding, what practical method of insuring the faithful performance of such contracts can be suggested that will not be open to the same objection? See Salt Lake City v. Smith, 43 C. C. A. 637, 104 Fed. 457.

As to the suggestion that the amount of work to be done was indefinite, this is wholly without merit. The proposals for bids advertised specify only approximate quantities, and the bidders bid upon a schedule of items of material and work in such a way that the successful bidder was bound according to a schedule of unit prices for the various items of work to be done. An alteration in quantity, therefore, either of excavation, filling, grading work, re-enforcing, surfacing, etc., reducing the quantity of any of such work, would but result in crediting the district with the price determined in advance, whereas an increase

would be paid for according to the same schedule. This method operates to practical advantage in determining allowances for omissions and claims for extra work. It is idle to contend, as appellants argue, that under the stipulation covering increases of the work the contractor might be required to pave additional streets not embraced in the plans and specifications, and that in anticipation of such possible obligations, contractors would refrain from giving favorable bids. The bidding is upon the plans and specifications, and the authority of the city commission extends only to the work therein embraced. No contractor of any experience would entertain the fears suggested by counsel. In passing it might be suggested that provisions of the character under discussion also serve to protect the city against claims for loss of profits where the quantity of the work is decreased. Walter v. McClellan, 48 Misc. 215, 99 N. Y. Supp. 78–83.

In further support of the contention that the contract is invalid, the appellants call attention to the provision requiring that the work shall be completed to the "entire satisfaction of the city engineer." This contract does not involve a matter of esthetic taste, and would be considered legally performed when the work was done in accordance with the plans and specifications. The engineer could not prevent a recovery of the compensation by capriciously or arbitrarily withholding his approval. See Gearty v. New York, 171 N. Y. 61, 63 N. E. 804, and cases cited therein; also Richison v. Mead, 11 S. D. 639, 80 N. W. 131; Nolan v. Whitney, 88 N. Y. 648.

The appellants also argue that the contract is invalidated by § 5242 of the Compiled Laws of 1913 by reason of the failure of the Ford Paving Company to obtain a license to do business in the state in conformity with § 136 of the Constitution and §§ 5238–5240 of the Compiled Laws of 1913. This contention is wholly without merit. It is not shown that the company was doing business here at or prior to the time of entering into the contract in question, and it appears that a license was obtained a little more than a month after the contract was made. See Beale, Foreign Corp. § 204.

The foregoing opinion considers all the objections urged by the learned counsel for the appellants. Finding that the objections made are legally insufficient to warrant the relief sought, and that the judgment of the trial court is in all things correct, it is affirmed.

ROBINSON, J. (dissenting). This is a timely suit to annul a contract for the pavement of some 12 miles of streets in northern Bismarck. It is free from all complications of estoppel or laches, which arise when parties commence actions after the construction of a pavement. The complaint avers that the entire cost of the paving will be grossly in excess of any possible benefits to the land and lots; and that is a fact of which a court sitting in Bismarck may well take judicial notice. In drainage district No. 2, which is the northern part of the city, the land has a gradual slope to the Missouri river. The natural drainage is ample and perfect, and the soil is light and does not become sticky like the soil of the Red river valley. In winter time pavement is of no use, and in summer time a day or two of wind and sunshine puts the streets in a splendid condition. And so a pavement can be of no real benefit only during the few days of the spring and autumn. Then it does appear that the northern part of the city is largely composed of lowly homes, where the children need bread and butter and clothing more than they need a pavement for a few days of the year.

The purpose of the statute is to authorize the construction of a pavement only in case of *necessity,* and not merely at the pleasure of the city commissioners; and they may not vest themselves with authority to make a pavement and to put mortgages on the lands of others by a mock resolution of necessity, when in truth and in fact there is obviously no necessity.

In any case, before the city counsel are authorized to construct a pavement, there must be some apparent necessity for it, and they must employ an engineer to prepare plans and specifications showing *all the details of the work to be done, with an estimate of the cost.* Then they must pass a resolution declaring the work to be *necessary,* and that resolution must refer to the plans and specifications and the *estimate of the cost,* and it must be published for two weeks. But the resolution of necessity in this case contains nothing in reference to the estimate of cost; nothing to warn the people of the total cost of the pavement or to call their attention to the importance of the matter.

In regard to the plans and specifications, they do not comply with the statute, and they do not give all the details of the work to be done. They do not give the working details so as to make it possible for a competent contractor to go out and do the work without a boss. Under

the statute the plans and specifications should have been as full and complete as the plans and specifications made by an architect for the building of a house. With plans giving all the details of the work to be done, the builder or contractor must know just what to do and how to figure on the work and to make his bid. But the plans and specifications in question give no such data. They say to the contractor: Commence and do the paving as the city engineer may direct. All work must be commenced at such times and in such places and in such manner as the city engineer shall direct. In all things you must implicitly obey the engineer and discharge your help as he may direct. You must remove and undo your work as he may direct. He may declare the contract null and void and the security forfeited, and his judgment is final.

Instead of working plans and specifications under which the contractor might go on and do his work in an independent way, the same as a builder, the idea was to subject him to the absolute control of the engineer, and to give the engineer 4 per cent, or $16,000, for bossing the summer job, when the bossing or supervision should not exceed $3,000. A public job should be done without graft and with precisely as much economy as a private job, and a public contractor should not have to charge an extra 10 per cent for putting himself at the mercy or dictates of a boss.

Those who have to pay the cost of an extensive paving should be fully and fairly consulted, and there should be no attempt to rush it over them or to force on them an expensive and needless pavement.

When public officers undertake to act under a statutory power, and to subject the property of others to the expense of an extensive paving system, they must act in good faith and fairness, just the same as if they themselves had to pay the expense. And it is their duty to consult the will and wishes and the interests of those who have to bear the expense, and to comply strictly with all the requirements of the statute. For these reasons, the judgment of the District Court should be reversed, and the case remanded to the District Court to enter judgment in favor of the plaintiffs, as demanded in the complaint.

The above opinion was written and given to the other judges a month ago, and, as I then understood, it was the opinion of most of the judges; but now, without any conference so far as I know, they sign a con-

trary opinion of twelve pages, and this long opinion does not attempt to deal with the real merits of the case. It makes no attempt to refute my concise arguments, and it makes not the least reference to the principle points; to wit:

(1) In northern Bismarck nature has paved the streets and made them so splendid that an artificial pavement would be of no possible use, and after a rain the ground dries up quickly and becomes about as hard as any pavement. The expense of keeping up a natural pavement and repaving is not half as much as keeping up and repairing an artificial pavement. The statute does not authorize a pavement by city commissioners, only in case of necessity. City commissioners may not vest themselves with authority to mortgage the lands and lots of others to pay for a pavement, by a mock resolution of necessity, when in truth and in fact there is obviously no necessity.

In most of drainage district No. 1, and in the business part of the city, a pavement is all right, and the frontage expense would not exceed 1 or 2 per cent on the value of the property. But in northern Bismarck, as a rule, the frontage expense would be equal to 60 or 100 per cent of the value of the lots, and in many cases it would be more than twice the value of the lots, and if charged against the lots it would confiscate them.

It is true that, according to law, no special assessment can be laid against any lot in excess of the actual benefits to the lot. In a lot which is 50 x 150, worth $700, the cost of a pavement at $7 a front foot was $1,400, or twice the value of the lot. If the pavement would not add more than $100 to the sale price or value of the lot, in such a case the special assessment would be limited to $100. And who is to pay the balance of $1,300? The statute expressly limits the amount of any special assessment to the special benefits. Comp. Laws, 1913, § 3726. And for that reason Judge Christianson was not disqualified by reason of owning a lot in the paving district, and he should not have refused to sit in this case. Under a proper construction of the law and a proper assessment, the paving could be of no injury to him any more than to any other property holder in the city of Bismarck.

Under the conditions presented a special assessment imposed on the people against their will comes near to being an outrage, and it must lead to endless litigation. There will be suits to restrain the commissioners from levying any assessment in excess of the actual benefits

or the increased value of each lot, and in case of an assessment in excess of actual benefits, the owner of each lot will have a right to maintain a suit to abate and reduce the same to the level of benefits.

(2) The city commissioners had no power or authority to contract for any pavement without first making and publishing a resolution of necessity, with an estimate of the cost. Comp. Laws 1913, § 3704. This, they failed to do. The resolution of necessity does not attempt to state any facts showing a necessity. It does not refer to any estimate of cost or in any manner refer to the cost. It contains not a word about the cost. The resolution must declare the work and improvement necessary to be done, and it must refer to the specifications and estimates of costs, and be published once in each week for two consecutive weeks in the official newspaper of the city. Comp. Laws, 1913, § 3703. If the resolution as published had stated that the pavement was to cost nearly $400,000, with engineer's fees nearly $16,000, then the people might have waked up and come in with their protests.

In Illinois, when there was a failure to comply with the statute requiring the engineer's estimate of cost to be made a part of the resolution, the proceeding was held void. Illinois C. R. Co. v. Eicher, 202 Ill. 557, 67 N. E. 376; Bickerdike v. Chicago, 203 Ill. 636, 68 N. E. 161. It was held not sufficient to state merely the gross amount of the estimate. The reasons given are that the estimate is not merely for the purpose of enabling the board to act, but also for the benefit and protection of the owners of property to be assessed. The items which entered into the improvements and the cost are facts material to be considered by the property owner in determining whether he will consent to or oppose the improvement, and for his protection the requirement of the statute must be complied with. Indeed the authorities are uniform in holding that an assessment for the cost of an improvement is void if the city fails to comply with the essential requirements of the act under which it proceeds. 28 Cyc. 1107.

The plans and specifications do not contain the details of all the work to be done, with an estimate of the cost, and that is an essential requirement of the statute. Comp. Laws 1913, § 3703. It is a document of forty-six very large pages of small print; it is in a cover marked "Specification for Paving." With the exception of part of the three first pages, it applies as well to a pavement in St. Louis or Omaha

36 N. D.—38.

as to a pavement in Bismarck. While it contains a multitude of rules in regard to the formation and laying the several different kinds of pavements, it does not specify the manner of grading the streets and laying the pavement on any particular street. It is a general book treatise on the manner of forming and laying of the different kinds of pavement, and it has no special application to a pavement in any particular city. It contemplates that the city engineer or his deputy shall boss the work from the beginning to the end, and give directions for the doing of everything. It does not contain the working details of the work to be done. These are jurisdictional and vital points, and they have not been fairly argued or considered. Hence, the case should be reargued and reconsidered, and Judge Christianson should be invited to act with the court and assume the duties and responsibilities which the law imposes on him.